MICHAEL EDWARD MILLAR *v.* STATE OF INDIANA.

[No. 572S58. Filed May 16, 1973. Rehearing denied July 17, 1973.]

*Anthony V. Luber,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment with first degree murder. Trial by jury resulted in a verdict of guilty of second degree murder. He was sentenced to the Indiana State Prison during life.

The record reveals the following evidence:

The appellant and Paulette Couch Szczesniak lived together in 1970. During this time he beat and threatened her

and, as a result, she attempted to sever their relationship. Shortly thereafter appellant began to harass her and, out of fear, she began to stay with friends (the James Young family). Appellant then extended his threats and harassment to the Youngs.

On February 14, 1971, appellant purchased a .22 caliber rifle and ammunition. On the evening of February 16, 1971, Mr. Young was working. The decedent, Dale Lee Sherry, a friend of the family, was staying at the home because Mrs. Young was afraid of the appellant. At approximately 10:30 P.M. two shots were fired into the house. The decedent obtained a shotgun and went to the back of the house to investigate. Mrs. Young heard another shot fired and the decedent stumbled back into the house and collapsed. As Mrs. Young attempted to telephone the police, the appellant came in the door with a rifle. Mrs. Young ran into the bathroom, lay down on the floor and braced the door. Another shot was fired through the bathroom door, the slug lodging in the wall. Appellant damaged the telephone rendering it inoperable. As appellant left, Mrs. Young observed him drive off in his blue Ford station wagon. She then went to the neighbors and called the police.

An autopsy revealed that the decedent had died from massive hemorrhaging caused by a .22 caliber slug, which was removed from his body. It was later established that the slug had been fired from appellant's rifle.

At 12:25 on the following morning, the Niles Police Department received an area broadcast from the Mishawaka Police Department that appellant was wanted in a murder investigation and was driving a 1964 blue Falcon four-door station wagon, license number 71F9408. The broadcast also gave a physical description of the appellant.

Approximately one and one-half hours after the broadcast was made, two patrolmen of the Niles Police Department saw a car fitting the description and having the same license number

as the one described in the broadcast. At the time the officers observed this car, it was parked at a drive-up telephone in Niles, Michigan. The officers approached the vehicle and asked the appellant to get out, at which time they saw a .22 caliber rifle with a cartridge jammed in the ejector laying on the seat next to appellant. They also saw a box of ammunition with nine rounds missing laying on the front seat.

At the trial appellant testified that he went to several places where Miss Szczesniak's friends lived to harass them by shooting into their homes. He stated that he had fired twice into the Young's house on the night in question and was approaching the back door to break some windows when the decedent appeared at the back door with a shotgun. Appellant stated that he shot the decedent out of fear. He further testified that at the time the shot was fired through the bathroom door he was only trying to calm Mrs. Young and that the rifle accidently struck the door and discharged.

Appellant first contends that the evidence was insufficient to support the verdict of the jury. He argues that the State failed to prove intent and also failed to prove that he was sane under the law. Appellant had interposed the defense of temporary insanity. As recited above, there was substantial evidence of probative value from which the jury could infer that appellant had the requisite intent. This Court has often held that intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death. *Powell* v. *State* (1970), 254 Ind. 200, 258 N. E. 2d 633, 21 Ind. Dec. 455.

Concerning the issue of insanity, one of the psychiatrists, Dr. Metcalfe, testified that his examination of the appellant led him to believe appellant was unable to overcome his irresistible impulses. Appellant's father testified that in appellant's childhood he had acted irrationally and without control. Dr. Murphy, who also examined the appellant, testified that she found him to be psychopathic but able to control his impulses if he desired to do so. On

appeal, this Court will not weigh the testimony of the witnesses nor determine their credibility. Where, as here, the evidence is conflicting as to whether or not at the time of the alleged incident the appellant had the ability to control his impulses, the finding of the jury will not be disturbed. *Hash* v. *State* (1973), 259 Ind. 683, 291 N. E. 2d 367, 34 Ind. Dec. 635.

Appellant next contends the trial court erred in giving State's tendered instruction No. 4 in that it was repetitive of the court's instruction No. 5. State's instruction No. 4 reads as follows:

> "While it is the law that every person charged with the commission of a crime is presumed to be innocent until his guilt is established beyond a reasonable doubt, yet, if the evidence is so strong and conclusive as to overcome the presumption of innocence, under the law this presumption of innocence will avail nothing to the Defendant, and under such circumstances you should convict."

The court's instruction No. 5 reads as follows:

> "While a defendant is presumed in law to be innocent of a crime until the contrary is established by the evidence to that degree of certainty that you as jurors are convinced of his guilt beyond a reasonable doubt, the rule of law which throws around the defendant the presumption of innocence and requires the state to establish beyond a reasonable doubt every material fact averred in the indictment is not intended to shield those who are actually guilty from just and merited punishment; but is a humane provision of law which is intended for the protection of the innocent, and to guard, as far as human agencies can, against the conviction of those who are innocent and unjustly accused of crime. And by reasonable doubt is not meant a mere whim, a captious or speculative doubt. It is properly termed a reasonable doubt, and it must arise from the evidence relating to some material fact or facts charged in the indictment."

Appellant claims the instructions were so similar as to be argument by the court that the jury should convict the appellant. While one instruction is somewhat repetitious of the other, we find no error. As this Court stated in *Johnson*

v. *State* (1972), 258 Ind. 683, 284 N. E. 2d 517, 519, 31 Ind. Dec. 617, 620:

> "Certainly all phases of the law cannot be covered in a single instruction. By their very nature there is a certain amount of repetition in the instructions when taken as a whole. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper."

We, therefore, hold there was no reversible error in the giving of the two above instructions.

Appellant next claims the trial court erred in giving State's tendered instruction No. 5, which reads as follows

> "Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of the testimony to be determined from the whole body of the evidence. A circumstance considered apart from the other evidence may be weak, if not improbable, but when viewed in connection with the surrounding facts and circumstances may be so well supported as to remove all doubt as to its existence as detailed by the witnesses. Acts considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt."

Appellant contends that this instruction is a statement of law for appellate review only and, as such, should not be considered by the jury.

Appellant also argues that the State's tendered instruction No. 5 is contradictory to the court's instruction No. 4, which reads as follows :

> "It is provided by statute that a defendant is presumed to be innocent until the contrary is proven. When there is a reasonable doubt whether his guilt is satisfactorily shown he must be acquitted.
>
> "Under the law it is your duty to presume the defendant in this case to be innocent of the crime charged, and this presumption remains with him throughout the trial, and it is your duty, if it can be consistently done, to reconcile

all the evidence in this case upon the theory that the defendant is innocent, and so long as any one of you have from the evidence in the case upon any material point, a reasonable doubt of his guilt, he should not be convicted. If you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence you should do so, and in that case find him not guilty."

State's tendered instruction No. 5 was taken verbatim from *Shutt* v. *State* (1954), 233 Ind. 169, 117 N. E. 2d 892. There the Court quoted from *Goodwin* v. *State* (1884), 96 Ind. 550. In the *Shutt* case the Court stated at page 175:

"It was the duty of the trial court here to determine the weight of the testimony from the whole body of the evidence."

We, therefore, hold it was proper for the trial court to give State's tendered instruction No. 5.

Upon a reading of the two instructions, we find that there is no duplication or contravention which would justify a reversal of this cause.

Appellant next claims the trial court erred in admitting State's exhibits 17, 18 and 19 over his objections. These exhibits were the rifle, the magazine from the rifle, and the box of shells. Appellant argues that they were the fruits of an illegal search of his car, claiming that it was not shown that the Niles police officers who recovered these objects had probable cause to conduct a search. However, it is quite clear from the testimony of Officer Mason of the Niles Police Department that there was, in fact, no search. The officers certainly had probable cause to approach and question the appellant. As they did this they observed each of the exhibits complained of in open view on the front seat beside the appellant. Such a discovery does not come within the ambit of a search. *Alcorn* v. *State* (1970), 225 Ind. 491, 265 N. E. 2d 413, 24 Ind. Dec. 268. We find no reversible error in the record in this cause.

The trial court is, therefore, affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., concurs with opinion.

## CONCURRING OPINION

DeBbuler, J.—While I concur in the disposition of this case made by the majority, I would resolve the search and seizure issue raised by appellant in a different manner. Appellant claims that his arrest, the search of his car, and the seizure of the rifle and cartridges, occurring in Niles, Michigan were effectuated without probable cause and that the rifle and cartridges should have been excluded upon his objection at trial. Appellant was arrested upon the basis of an area radio broadcast received from the Mishawaka, Indiana police. Appellant contends that this broadcast could not have supplied the Niles police with probable cause to arrest him and therefore the search of his car incident thereto violated his rights under the Fourth and Fourteenth Amendments. *Mapp* v. *Ohio* (1960), 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. The appellant argues that the State failed to show that the Mishawaka police who initiated the radio broadcast possessed information which was of such a nature and quality as would support an independent judicial assessment of probable cause. *Whiteley* v. *Warden* (1971), 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306. While it is true that there is no identifiable portion of the trial in which the State focused on sustaining this burden, the record of the trial does contain testimony that supports the conclusion that the Mishawaka police did have such information prior to the radio broadcast. The State's witness Young was present in the house when the shooting occurred and was herself shot at by the appellant. She did give a report of the crime to the Mishawaka police within minutes after it occurred.

Note.—Reported in 295 N. E. 2d 814.