**Ralph CORBIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 86S00–8808–CR–713.**

Supreme Court of Indiana.

Nov. 27, 1990.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder. He was sentenced to a term of sixty (60) years.

The facts are: In late 1985, David Fording was killed by severe blunt- and sharp-force injuries to his head and torso. The autopsy report indicated evidence of prior injuries including numerous fractures to the decedent over a period of time.

David, who was a 35-year-old retarded man, had been living with his mother, Hazel Fording, and appellant prior to his death. All three had lived together in Lafayette, Indiana before moving to Warren County outside Williamsport, Indiana. Appellant admitted repeatedly hitting David causing his ear to swell and the loss of a tooth. In addition, other witnesses testified regarding beatings of the victim.

One day after Thanksgiving in 1985, Hazel noticed a hole in David's head when he was ordered by appellant to the outside cellar for punishment. Hazel later took David from the cellar and put him to bed. That evening David died. Appellant loaded David's body in the trunk of his car, drove to the barn, and buried him under the floor in the barn.

During the period when David was missing, concerned relatives contacted authorities and a missing person investigation was undertaken. Hazel and appellant, throughout this period, claimed David had decided on his own to leave, and they had given him bus money. Approximately one year later in November of 1986, David's body was discovered in the barn.

Appellant contends the verdict is not supported by sufficient evidence and is contrary to law. Appellant claims he is not responsible by reason of mental disease or defect. He contends the State failed to prove he acted voluntarily or intentionally and failed to prove beyond a reasonable doubt that any act committed by him caused David's death.

■ This Court will not weigh the evidence nor judge the credibility of witnesses. *Butler v. State* (1989), Ind., 547 N.E.2d 270.

Under Ind.Code § 35-41-4-1(b), the burden is on appellant to prove insanity by a preponderance. Thus appellant's argument concerning voluntariness necessarily placed on him the burden of proving involuntariness as an affirmative defense. Therefore, because appellant had the burden, he is appealing from a negative judgment. From the record in the instant case, it is evident that the trier of fact had sufficient evidence upon which to base its decision. We find no error.

■ With regard to appellant's claim of intent, this Court has stated that so long as the offender is capable of conceiving a design, he will be presumed in the absence of contrary proof to have intended the natural consequences of his own acts. *See Cowans v. State* (1980), 274 Ind. 327, 412 N.E.2d 54. The necessary intent to commit a crime may be inferred from the circumstances of the acts involved. *Norman v. State* (1989), Ind., 539 N.E.2d 937. Intent to kill can be inferred from the intentional use of a deadly weapon in a manner reasonably calculated to produce death or great

bodily injury. *McMurry v. State* (1984), Ind., 467 N.E.2d 1202.

The medical evidence shows that David's fatal injuries were caused by blunt force and a heavy, sharp instrument, with the blunt-force injuries being consistent with being beat with a hammer. Testimony was presented to the jury that appellant had struck David around the time of his death on his neck and spine with a hammer. The autopsy revealed that David received numerous blows to his head with any one being sufficient to cause his death. Testimony also presented at trial by witnesses and appellant revealed numerous beatings by appellant upon David.

■ The record also reveals the existence of threats made by appellant to the victim. These threats could be considered by the jury in arriving at its verdict. *See Brown v. State* (1987), Ind., 503 N.E.2d 405; *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, *cert. denied*, 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86.

There was substantial evidence of probative value including the threats, pattern of beatings, nature of the injuries, and the use of a blunt-force instrument from which the trier of fact could have concluded that appellant intended to kill David. We find no error.

■ Appellant contends that he proved by a preponderance of the evidence that he was not responsible by reason of a mental disease or defect.

■ In making its determination on sanity, a jury may consider lay or expert opinion to determine a defendant's mental capacity at the time of the offense. *Baxle v. State* (1985), Ind., 480 N.E.2d 561.

Indiana Code § 35–41–3–6 reads as follows:

"(a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.

(b) As used in this section, "mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct."

In the instant case, four psychiatrists testified regarding appellant's condition. One psychiatrist testified that he felt appellant had an organic brain syndrome and that he did not understand the severity and grossness of his actions. Another doctor testified that he felt appellant was sane and did not suffer from a mental defect at the time of the commission of the crime. The third doctor testified that he felt appellant had some mental abnormalities but that he could appreciate the wrongfulness of the act and was sane at the time the act was committed. The fourth doctor testified that appellant had a chronic psychotic condition and an anti-social personality trait.

From the testimony presented at trial, it is apparent that experts had a difference of opinion with regard to appellant's sanity at the time of the offense. In addition, lay witness testimony also showed a difference of opinion with regard to appellant. The jury had the benefit of these conflicting opinions plus appellant's own testimony. We will reverse the trial court on a finding of sanity "only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion,...." *Green v. State* (1984), Ind., 469 N.E.2d 1169, 1171. We would not be justified invading the province of the jury in this matter. We find no error.

■ Appellant contends he was denied the right to adequately cross-examine State's witness, David York.

On cross-examination, York refused to give his street address in Lafayette.

In support of appellant's argument, he cites the case law holding that a defendant is presumptively entitled to cross-examine a government witness as to his address. *See Smith v. Illinois* (1968), 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956; *Crull v. State*

(1989), Ind., 540 N.E.2d 1195; and *Johnson v. State* (1988), Ind., 518 N.E.2d 1073.

This Court stated in *Johnson:*

"Since the trial judge is in the best position to observe the trial proceeding, the trial judge should control the extent of cross-examination and accordingly will be reversed only on an abuse of discretion. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1107. To show an abuse of discretion, a defendant must demonstrate how he was prejudiced by the court's actions. *Id.*" *Id.* at 1075.

In the instant case, unlike *Crull,* appellant made no request for an *in camera* hearing to determine reasonableness of refusal to disclose. We hold that the ruling in *Johnson* is dispositive of the issues in this case. In the instant case, David York's testimony was consistent with others who testified regarding prior instances between the appellant and the victim. These instances included prior injuries to the victim and threats by appellant to kill the victim. In addition, appellant nowhere in his argument demonstrated how he was prejudiced by the lack of the residential address of the witness. We find no error.

■ Appellant contends the trial court erred in admitting into evidence that he had committed a prior battery upon his former wife.

As the State properly notes, when the insanity defense is pled, the appellant opens up his conduct for examination. *See Miller v. State* (1988), Ind., 518 N.E.2d 794.

In *Brown v. State* (1987), Ind., 512 N.E.2d 173, 176, we said that when dealing with an issue of improper evidence during an insanity defense:

"Even where we have found that evidence of this sort is irrelevant and even prejudicial, we find it reversible only *if* we determine the evidence had a substantial influence on the jury's verdict."

In the instant case, appellant objected during trial to the testimony of appellant's former spouse regarding a prior offense of battery committed upon her. However, as the State indicates, this evidence would tend to show appellant's mental state and the ability of appellant to go into a rage. We find no error in admitting the testimony.

Even assuming for the sake of argument that this testimony was irrelevant and prejudicial, it does not appear to have had a substantial influence on the jury's verdict. The record in the instant case reveals testimony presented by others regarding appellant's behavior toward the victim and his prior threats. There was no reversible error in admitting this testimony.

■ Appellant argues the trial court erred in denying his motion to suppress statements he made which were obtained in a custodial interrogation without first having been given his *Miranda* advisement. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

*Miranda* warnings apply in the context of a "custodial interrogation" which means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

This Court, in reviewing the question of admissibility of a confession, reviews this issue the same as in other instances of sufficiency matters in that we do not weigh the evidence. *Dillon v. State* (1983), Ind., 454 N.E.2d 845, *cert. denied* (1984), 465 U.S. 1109, 104 S.Ct. 1617, 80 L.Ed.2d 145.

*Miranda* warnings do not need to be given when the person questioned has not been placed in custody. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128. As we stated in *Boarman v. State* (1987), Ind., 509 N.E.2d 177, 180–81:

"Not every question a police officer asks one in custody amounts to an "interrogation." *Johnson v. State* (1978), 269 Ind. 370, 377, 380 N.E.2d 1236, 1240. If it does not appear that the purpose of the question is to obtain a confession from the suspect, *Miranda* is not triggered and it is not necessary that the suspect first be advised of his rights. *Id.* at 377, 380 N.E.2d at 1240."

In the instant case, the State contends that appellant was not a suspect at the time in question. The State called former Lafayette Police Detective Rafeal Ramaris, who testified that on December 27, 1985 he conducted a check on the whereabouts and well-being of David Fording. During this process, he interviewed Stella Likens and Jack Likens at the Lafayette Police Headquarters, and they responded during the interview that they knew David to be the son of Hazel Fording. In addition, he found out that David had been living with Hazel and appellant in the Williamsport area and that they had last seen David sometime between Thanksgiving and Christmas. Both Stella and Jack stated that Hazel and appellant had told them that David no longer wanted to live with them and had moved out.

The State then called Indiana State Police Officer Dana Jeffries who testified that he was asked to help on the investigation into the whereabouts of David Fording, and he indicated that he did not believe foul play was involved. He further testified that during the interview with appellant, nobody accused him of foul play, and appellant voluntarily came to the jail for questioning in his own vehicle. The officer further testified that appellant was never in custody, and upon finishing the interview, Hazel and appellant were free to leave.

It is clear that appellant was being interviewed only as to the disappearance of David and nowhere in the record does it show that appellant was a suspect during the interview process. Therefore, appellant was not entitled to a *Miranda* advisement. *See Fowler v. State* (1985), Ind., 483 N.E.2d 739.

 Appellant contends the trial court erred in giving the State's Tendered Instructions. Appellant claims that five instructions given were improper.

State's Instruction No. 1 reads as follows:

"If a defendant is innocent, he should not be convicted erroneously; but if a defendant is guilty, he should not be acquitted erroneously. By acquittal of the guilty, the contempt of the law is aroused among the criminal classes and the safeguards of society are weakened."

As appellant notes in his brief, this instruction has been approved by this Court on numerous occasions. *See Cheney v. State* (1985), Ind., 486 N.E.2d 508 and *Opfer v. State* (1985), Ind., 482 N.E.2d 706. We cannot say that the trial court erred in giving this instruction.

 Instruction No. 3 reads as follows:

"There is a presumption in the law that all persons are sane and intend the reasonable, foreseeable consequences of their acts."

This Court, in *Darby v. State* (1987), Ind., 514 N.E.2d 1049, found the presumed sanity and intention instruction to be proper. *See also Sanders v. State* (1884), 94 Ind. 147. In the instant case, the jury was instructed both preliminarily and finally to consider the instructions as a whole. We find no error in the giving of this instruction.

 Instruction No. 6 stated:

"If you believe from the evidence any witness including any party has willfully and knowingly testified falsely as to any material fact in this case, you may disregard his entire evidence except so far as he is corroborated by other credible evidence or by other equally credible facts and circumstances proved in the trial."

This Court, as appellant concedes, has held that this is a correct statement of the law. *King v. State* (1977), 267 Ind. 306, 369 N.E.2d 1076; *See also Rieth–Riley Construction Company, Inc. v. McCarrell* (1975), 163 Ind.App. 613, 325 N.E.2d 844. Appellant contends however that the instruction is confusing and misleading since it places an impermissible burden on the juror's right to decide whom to believe. We find this argument to be without merit and find that this instruction was proper.

 Instruction No. 7 reads as follows:

"The Court further instructs you that you should not indulge in purely speculative doubts, and the bare possibility that

the defendant may be innocent does not raise a reasonable doubt. The question of defendant's guilt must be determined by each of you in view of your obligation to act honestly and fairly in weighing the evidence in reaching a decision which your oaths impose."

This instruction is a correct statement of the law. *See Hartwell v. State* (1974), 162 Ind.App. 366, 321 N.E.2d 222. Appellant contends that the mere fact the instruction correctly states the law does not make it automatically an appropriate instruction and contends that this instruction was likely to confuse and mislead the jury in applying the principle of reasonable doubt to his case. We fail to find any merit to appellant's contention. Appellant merely makes a bare assertion that this instruction is improper. He fails to substantiate it in any way. We find no error.

Instruction No. 8 is as follows:
"While it is the law that every person charged with the commission of a crime is presumed to be innocent until his guilt is established beyond a reasonable doubt, yet, if the evidence is so strong and conclusive as to overcome the presumption of innocence, under the law this presumption of innocence will avail nothing to the defendant, and under such circumstances you should convict."

In *Millar v. State* (1973), 260 Ind. 368, 295 N.E.2d 814, this Court approved this instruction and found that it was not unduly repetitive and cumulative of other general reasonable doubt instructions. In the instant case, the trial court did give a general instruction defining reasonable doubt. We find no error.

Appellant contends the trial court erred in refusing to give an instruction which reads:
"You are instructed that if you find from the evidence that the Defendant was of less than normal will power, this condition standing alone, is not in and of itself a defense to any crime.

However, you may consider this evidence in determining whether the Defendant had the ability to know and appreciate the wrongfulness of his conduct and to form the specific criminal intent which the State is required to prove beyond a reasonable doubt."

Appellant contends that no other instruction given to the jury informed the jury that it could consider appellant's mental disabilities in deciding whether he formed the specific intent to kill. The record reveals that instructions were given which adequately described the insanity defense in terms of the statute. We find appellant's argument to be without merit.

Appellant also contends the trial court erred in refusing to give his Tendered Preliminary Instructions Nos. 1 through 5.

As to appellant's Preliminary Instructions 1 through 3, they purported to cover his insanity defense and the burden of proof thereon, including a definition of "preponderance of the evidence" and mental disease. These subjects were covered adequately in other instructions given by the court. In fact, many of the instructions given by the court went beyond those which were tendered by appellant.

As to appellant's refused Preliminary Instructions 4 and 5, they purported to cover the manner in which appellant would be sentenced if he were found to be mentally ill and what would happen if he were found not guilty by reason of insanity. Although those instructions were not given as preliminary instructions, they in fact were given as final instructions. We find no error in the fact that they were not given as preliminary instructions.

Appellant argues the trial court abused its discretion by ruling that State's witness, Dr. Cook, was qualified to give an opinion as to the nature and cause of death.

In general, the determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court whose ruling will not be disturbed absent an abuse of discretion. *Wissman v. State* (1989), Ind., 540 N.E.2d 1209. To qualify as an expert, the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and the witness must have suf-

ficient skill, knowledge or experience in the field to make it appear that the witness's opinion or inference will aid the jury. *Id.* No precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject matter. *Id.*

In the instant case, the cause of death was obviously not within the knowledge of the average lay person. Dr. Cook testified without objection that she practiced in part in the area of forensic anthropology. She also testified regarding her experience in the area of her expertise. Dr. Cook opined the cause of death to be blunt- and sharp-force injuries to the head and neck. We find no error in permitting Dr. Cook to testify.

■ Appellant contends the trial court erred by permitting the State to repeatedly display cumulative photographs and a videotape to the jury depicting David's decomposed body.

Appellant's objections at trial as to these photographs and videotape did not challenge the exhibits as gruesome but instead as cumulative.

This Court stated in *Miller v. State* (1989), Ind., 541 N.E.2d 260, 262:

"The admission of photographs is within the sound discretion of the trial court, and its determination will not be reversed absent an abuse of discretion. Photographs which are demonstrative of testimony given by a witness are generally admissible. On appeal, we consider whether the probative value of the photographs outweighed their prejudicial effect." (Citations omitted.)

■ In the instant case, the photographs of the body were demonstrative of witnesses' testimony concerning the nature of the wounds. We cannot say that their probative value did not outweigh their prejudicial effect. Admission of cumulative evidence alone is not grounds for reversal. *McCovens v. State* (1989), Ind., 539 N.E.2d 26; *Sharp v. State* (1989), Ind., 534 N.E.2d 708. We find no error.

■ Appellant contends the trial court erred by refusing to sequester the jury.

After the jury was selected and sworn, but prior to the giving of opening statements, appellant moved to sequester the jury due to media attention. The trial court denied the motion.

This Court in *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386, 1389 stated:

"The defendant alternatively moved for sequestration of the jury. In a non-capital case, sequestration of the jury is a matter within the sound discretion of the trial court. *Harris v. State* (1985), Ind., 480 N.E.2d 932. To succeed in showing abuse of discretion, the defendant must show that the jurors were exposed to trial publicity or that they violated an admonition to refrain from viewing media coverage. *Id.* at 935; *See Karlos v. State* (1985), Ind., 476 N.E.2d 819, 823. In the present case, the defendant has not shown that any juror violated the trial court's admonition to avoid exposure to media coverage of the trial. The motion was properly denied."

In the instant case, appellant has failed to show any exposure to trial publicity or that the jurors violated their admonitions. In fact, appellant makes only a bald assertion to support his claim. We find no error.

■ Appellant contends the trial court abused its discretion and denied him a fair trial by allowing the State to ask leading questions of two witnesses.

Allowing a leading question is primarily left to the trial judge's discretion. To show an abuse of discretion, it must be demonstrated that appellant suffered a substantial injury by the answer to the leading question. *Gentry v. State* (1984), Ind., 471 N.E.2d 263.

Appellant claims he was prejudiced because two witnesses, Likens and Hazel, provided evidence that he struck David on prior occasions. However, the record reveals that appellant admitted threatening and striking David. In addition, other witnesses' testimony provided substantial evidence that appellant had threatened David and had abused him on numerous occasions. We also note that the instances complained of by appellant do not show the

requisite injury required to gain reversal. We find no error.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The State's final instruction No. 3, approved and given by the court, stated, "There is a presumption in the law that all persons are sane and intend the reasonable, foreseeable consequences of their acts." A reasonable juror would understand this instruction to mean that although the facts do not warrant a logical inference or deduction of intent, the law supplies a presumption of intent that is every bit as good as a logical inference or deduction. That instruction on its face unconstitutionally shifts the burden of proof on the element of intent from the State to the defendant. *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). However, this obvious infirmity in an identical instruction was deemed rehabilitated when considered along with another instruction on intent, also present in this case, and overwhelming evidence of intent. *Darby v. State* (1987), Ind., 514 N.E.2d 1049. I dissented on the point in that case. I remain convinced that the infirmity is not cured when considered along with that other instruction, which is quoted in *Darby* and which was also given by the trial court in this case. Furthermore, unlike the situation in *Darby*, the evidence of Corbin's intent to kill is not overwhelming.