**Leon EATON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A03–9004–CR–161.**

Court of Appeals of Indiana, Third District.

July 22, 1991.

Albert Marshall, Crown Point, for appellant-defendant.

Linley E. Pearson, State Atty. Gen. and Sue A. Bradley, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Leon Eaton appeals his conviction for murder but mentally ill.

The facts relevant to this appeal disclose that defendant and his friend, Penelope Edmonds, the victim in this case, had been involved in an automobile accident. The insurance adjuster testified that when he went to take the defendant's statement he could hear the defendant and the victim arguing. The defendant agreed to give a statement regarding the accident, but the victim refused to give a statement and said she was going to hire an attorney.

The victim's daughter testified that the defendant and the victim had been arguing about the accident and the victim threatened to sue the defendant. After the victim threatened to sue the defendant, the defendant said that he would kill her and then, angrily left the house.

Approximately one week later, the defendant and his friend, Rogerick Williams, were driving around when the defendant suddenly asked Williams to look in the glove compartment to see if there was a knife. Williams confirmed that there was a knife.

Defendant then began pursuing a vehicle that was being driven by the victim. The victim's two daughters were also in the vehicle. After the defendant caught up with the victim's car, he began running his car into her's. The defendant continued hitting the victim's car with his own until the victim's car ran off the road.

When the two cars came to a stop, the victim and her two daughters exited the vehicle through the passenger's side. The victim told her two daughters to run. Defendant grabbed the victim, threw her to the ground, and began stabbing her.

Upon seeing what was taking place, Williams attempted to stop the defendant, but the defendant ordered Williams to leave. Williams went to a nearby house and asked that the police be notified.

The victim's one daughter, Deneene, saw the defendant stabbing her mother and asked the defendant to let her mother go. The defendant told her to leave. She ran to a home nearby to call for help. Once she found someone who said they would call for help, she returned to her mother's side. Deneene attempted to give her mother CPR, but was unable to revive her.

The victim's other daughter, Starr, also saw the defendant stabbing her mother. She heard her mother call for help and the defendant say he was going to kill her. A motorist stopped when she saw Starr hysterically crying. She asked Starr what was happening and Starr replied that someone was "trying to kill her mommy". She told Starr to get in the car and then, drove to the nearest gas station, where she had someone call the police and the fire department.

After killing the victim, the defendant left the scene. He got a ride to Grand Rapids, Michigan with a friend. Once in Grand Rapids, though, he proceeded to the police department and surrendered.

An information charging the defendant with murder was filed. After entering a plea of not guilty, the defendant later filed a plea of insanity. The trial court appointed two psychiatrists, Dr. Berkson and Dr. Batacan, to examine the defendant. Drs. Vargas and Brogno, psychologists, were requested to examine the defendant by defense counsel.

After a trial by jury, the defendant was found guilty but mentally ill. He was sentenced to fifty years and ordered committed to the Department of Correction for

proper assignment, evaluation, and treatment.

Two issues are dispositive of this appeal:

(1) whether the defendant's conviction of guilty but mentally ill was erroneous; and

(2) whether the sentence was manifestly unreasonable.

■ Under IND.CODE § 35–41–4–1(b) (1988 Ed.), the burden is on the defendant to prove insanity by a preponderance of the evidence. The defendant, in this case, contends that he sustained this burden and therefore, the verdict of guilty but mentally ill should be vacated. However, the jury found that the defendant was not insane; thus, defendant is appealing a negative judgment. This Court will not reverse the jury's finding of sanity unless the evidence is without conflict and leads unerringly to a contrary result. *Corbin v. State* (1990), Ind., 563 N.E.2d 86, 89.

■ In making a determination on sanity, the jury is entitled to consider lay or expert opinion on the mental state of the defendant at the time of the offense. *Id.* Ind.Code § 35–41–3–6(a) provides for the defense of insanity as follows:

"A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense."

■ In the instant case, two court-appointed psychiatrists and two psychologists, requested by defense counsel, testified regarding defendant's condition. Both psychiatrists recited the above-cited legal definition of insanity in Indiana. Then, Dr. Batacan testified that defendant was sane at the time of the commission of the crime. Dr. Berkson, the other psychiatrist, also testified that defendant was sane according to the above definition. Furthermore, Dr. Berkson stated that it was possible to be mentally ill but not legally insane.

However, Dr. Vargas stated in his opinion, the defendant was legally insane at the time of the offense. The other psychologist, Dr. Brogno, also found that the defendant did not appreciate the wrongfulness of his conduct at the time of the offense.

Due to the conflicting evidence regarding the defendant's sanity, the jury's rejection of his insanity defense was not contrary to law. The evidence did not lead unerringly to a single conclusion; therefore, the jury's finding of guilty but mentally ill is affirmed.

Next, defendant argues that his sentence is manifestly unreasonable considering that, except for a juvenile record, he has no criminal record. He believes that the court should have considered, in mitigation, the actions of the victim and his mental illness.

■ The proper sentence for the commission of murder is stated in Ind.Code § 35–50–2–3(a) (1988 Ed.):

"A person who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, the person may be fined not more than ten thousand dollars ($10,-000)."

Furthermore, IND.CODE § 35–36–2–5 (1988 Ed.) states, in relevant part, the procedure to be followed when a defendant is found guilty but mentally ill:

"(a) Whenever a defendant is found guilty but mentally ill at the time of the crime, or enters a plea to that effect that is accepted by the court, the court shall sentence him in the same manner as a defendant found guilty of the offense. (b) If a defendant who is found guilty but mentally ill at the time of the crime is committed to the department of correction, he shall be further evaluated and then treated in such a manner as is psychiatrically indicated for his mental illness. Treatment may be provided by:

(1) the department of correction; or

(2) the department of mental health after transfer under IC 11–10–4."

The court sentenced defendant to fifty years and ordered him committed to the Department of Correction for proper assignment, evaluation and treatment pursu-

ant to IND.CODE § 35–36–2–5. The trial court found the crime to be particularly heinous. The court noted that the victim had been stabbed seventeen times. The court found the crime to be especially cruel since it took place in front of her two children. A lack of remorse for the victim and her two children was noted by the trial court. The court stated that defendant was in need of correctional treatment that could best be provided by his commitment to a penal facility. Also, the court found that imposition of a reduced sentence would depreciate the seriousness of the crime.

The trial court found the above circumstances sufficient to warrant the maximum sentence; however, in mitigation, the court found that the defendant was mentally ill; there were extenuating circumstances in defendant's relationship with the victim; defendant had a good employment record; defendant had no prior felony convictions; and the mother of the victim recommended leniency.

After balancing all of the factors, the trial court found the aggravating circumstances outweighed the mitigating circumstances and sentenced the defendant to fifty years. This court "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B)(1). "A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." App.R. 17(B)(2). Considering the aggravating factors in this case, the sentence was not manifestly unreasonable. Therefore, the sentence is affirmed.

Affirmed.

ROBERTSON and STATON, JJ., concur.