## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 02 2015, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Cochren
Reeves, Cochren & Moon
Princeton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan Nieves,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 2, 2015

Court of Appeals Case No.
26A04-1501-CR-46

Appeal from the Gibson Superior Court
The Honorable Earl G. Penrod, Judge
Trial Court Cause No.
26D01-1403-FA-2

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a jury trial, Ryan Nieves was found guilty of eight counts of child molesting, all Class A felonies, and one count of child molesting, a Class C

felony.  He raises three issues for our review, which we restate as:  1) whether the evidence sustains his convictions; 2) whether Nieves was prejudiced by the State's leading questions; and 3) whether the trial court abused its discretion when it sentenced Nieves to consecutive sentences.  Concluding that the State produced sufficient evidence of Nieves's guilt, the trial court properly allowed the State to lead its witnesses, and the trial court acted within its discretion when it sentenced Nieves, we affirm.

# Facts and Procedural History

[2] Jessie is the mother of three daughters: M.S., age seven; J.S., age six; and E.M., age four.  Jessie married Nieves in October 2012.  M.S. and J.S. lived with Jessie and Nieves in a trailer in Patoka.  Early in 2013, the Department of Child Services removed M.S. and J.S. from the home and placed them with their maternal grandmother.  In September 2013, the girls were returned to the home that Jessie continued to share with Nieves.  E.M., who lived with her father, spent every other weekend with Jessie, Nieves, M.S., and J.S.

[3] Jessie took muscle relaxants, anti-inflammatory medication, and anti-depressants.  These medications made Jessie drowsy to the extent that she sometimes slept up to eighteen hours a day.  Jessie was a very sound sleeper. When Jessie was asleep, Nieves cared for the girls.  During the fall of 2013, M.S. began to hold her feces until she lost control and became incontinent.  She would also vomit.  During the same period, J.S. began "humping" her stuffed

animals.  E.M. began to wet herself upon returning from her visits to Jessie and Nieves's house.  No medical reasons were found for these issues.

[4] On December 18, 2013, a seventeen-year-old friend of Jessie's who was taking a nap at the trailer awoke to find Nieves had placed one of his hands inside her pants and his other hand on his penis.  The friend fled but later informed Jessie about what had occurred.  Jessie became irate and later that day confronted Nieves about it.  M.S. and J.S. were in the trailer on the couch and could hear the confrontation.  When Jessie sat down with the girls, M.S. disclosed that Nieves had been sexually molesting her and J.S.  Jessie left the home with M.S. and J.S. and reported Nieves to the authorities.  Subsequently, E.M. also reported that Nieves had sexually molested her.

[5] The State charged Nieves with three counts of child molesting as a Class A felony and one count of child molesting as a Class C felony for his crimes against M.S.  The State also charged Nieves with three counts of Class A felony child molesting for his crimes against J.S. and with two counts of Class A felony child molesting for his crimes against E.M.

[6] At trial, M.S., J.S., and E.M. testified to acts of sexual intercourse, deviate sexual conduct,[1] and fondling by Nieves.  The girls also related that Jessie was sometimes in the room when the offenses occurred.  Other facts revealed at trial were that M.S. saw Nieves subject J.S. and E.M. to sexual intercourse and

---

[1] Now "other sexual conduct."  Ind. Code § 35-31.5-2-221.5 (eff. July 1, 2014).

deviate sexual conduct. J.S. saw Nieves subject M.S. to the same acts. These acts occurred on more than one occasion. J.S. stated that the crimes always happened when the girls were living with their mother and Nieves in the trailer. E.M. stated that Nieves's offenses against her occurred when she was visiting at her mom's house.

[7] All three victims had difficulty testifying. Defense counsel objected several times during trial that the State was leading its witnesses. In ruling on one such objection, the trial court admonished the prosecutor to "[b]e careful." Transcript Vol. I at 156.[2] The trial court explained to the jury that

> [w]e're trying to make certain this the [sic] witness is able to communicate. Ladies and gentlemen, this should be done for any witness who is not able to verbalize. It wouldn't merely be a child, but we have to make certain that it is the witness's evidence and testimony. So we're trying to be very cautious here. I'm not trying to be unduly difficult here, but we do have to make certain it isn't simply the witness mimicking what the attorney may say.

*Id*.

[8] The jury found Nieves guilty on all counts. At sentencing, the trial court found the nature of the offenses - which were a pattern of conduct and not an isolated incident - Nieves's lengthy criminal history, his abuse of his position of trust with the victims, and the extreme youth of the girls to be aggravating factors.

---

[2] Indiana Appellate Rule 28(A)(2) provides that the "pages of the Transcript shall be numbered consecutively regardless of the number of volumes the Transcript requires." Because the Transcript in this matter was not correctly paginated, we refer to the separate volumes of the trial transcript.

The trial court found Nieves's difficult childhood to be a mitigating circumstance. The trial court imposed thirty-year sentences for each Class A felony conviction and a four-year sentence for the Class C felony. The trial court ordered one Class A felony sentence as to each of the three victims to be served consecutively to each other and the remainder to be served concurrently, resulting in an aggregate sentence of ninety years. The trial court stated that it was imposing consecutive sentences in Nieves's case in recognition of each "separate victim." Sentencing Transcript at 34. Nieves now appeals. Additional facts will be added as necessary.

# Discussion and Decision

## I. Sufficiency of Evidence

### A. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict." *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We will not reweigh evidence or assess credibility of the witnesses. *Glenn v. State*, 999 N.E.2d 859, 861 (Ind. Ct. App. 2013). We will affirm unless no reasonable fact-finder could find the elements of the offense proven beyond a reasonable doubt. *Id.*

# B. Incredible Dubiosity

M.S., J.S., and E.M. testified at trial and described acts constituting the charged offenses. The testimony of these victims, in and of itself, is sufficient to sustain Nieves's convictions. *See Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Yet, Nieves contends that the girls' testimony is subject to the "incredible dubiosity" rule. The rule provides that

> [i]f a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (quotation omitted).

Contrary to Nieves's arguments on appeal, the rule does not apply here for a number of reasons. Each girl's testimony was corroborated by one of the other girls, so their testimony was not "wholly uncorroborated" as the rule requires. *Id*. In addition, the fact that none of the girls had physical injury does not render their testimony improbable. The physician who performed the girls' post-disclosure physical examinations explained that finding injuries in such cases is extremely rare, regardless of the size of a man's penis. Furthermore, although it may be shocking, there is nothing inherently improbable about the girls' testimony that their mother was sometimes in the room while the offenses occurred. The girls' testimony was not incredibly dubious.

# C. Venue

[12] Nieves also claims that the State failed to produce evidence that the offenses occurred in Gibson County. However, Nieves did not object on this basis at trial. We agree with the State that Nieves did not preserve this claim properly for our review. *See Floyd v. State*, 503 N.E.2d 390, 393 (Ind. 1987) (noting the court has held many times that a defendant waives error relating to venue when he fails to object at trial). Waiver notwithstanding, we will address his claim because of our preference for deciding issues on the merits. *Collins v. State*, 639 N.E.2d 653, 655 n.3 (Ind. Ct. App. 1994), *trans. denied*.

[13] Venue must be proven by a preponderance of the evidence, and it may be proven by circumstantial evidence. *Buzzard v. State*, 669 N.E.2d 996, 997 (Ind. Ct. App. 1996). We review the sufficiency of the evidence supporting venue under the same standard as any other sufficiency claim. *See Weiss v. State*, 735 N.E.2d 1194, 1196 (Ind. Ct. App. 2000), *trans. denied*. We consider only the evidence and inferences that support the fact-finder's determination, and we do not reweigh the evidence or reassess the credibility of witnesses. *Id.*

[14] The evidence presented at trial was that when M.S. and J.S. came back from their grandmother's home to live with Jessie full-time, they lived in the trailer in Patoka. Jessie's mother supplied a street address in Patoka for the trailer. Nieves lived there with Jessie until the girls' disclosure of the offenses. J.S. testified that the offenses occurred in the trailer when she was living with Jessie and M.S. M.S.'s testimony was that the offenses occurred in the bedroom and

living room when she was living with Jessie. The offenses against E.M. occurred when she visited M.S. and J.S. at Jessie's trailer. In addition, the Gibson County Sheriff's Department investigated the offenses. This evidence was sufficient to establish that the offenses took place in Patoka, Gibson County. *See Mitchell v. State*, 644 N.E.2d 102, 104 (Ind. 1994) (holding venue established upon showing that the crime occurred in a certain housing complex on the outskirts of Lafayette); *see also Currin v. State*, 497 N.E.2d 1045, 1048 (Ind. 1986) (holding venue proven where crime took place at a certain street address and was investigated by Marion County officials).

## II. Leading Questions by the State

### A. Standard of Review

The trial court is afforded wide discretion in determining whether to permit the use of leading questions. *Riehle v. State*, 823 N.E.2d 287, 294 (Ind. Ct. App. 2005), *trans. denied*. This court will reverse only for an abuse of that discretion. *Id*. In order to obtain a reversal, it must be shown that the defendant sustained "substantial injury" from the answers to the leading questions. *Corbin v. State*, 563 N.E.2d 86, 93 (Ind. 1990).

### B. Questioning of Child Victims

Nieves claims that "at various times" the trial court permitted the State to lead its witnesses, which "was prejudicial to the Defendant in that the testimony was

directed by the [S]tate which was allowed to occur."[3] Appellant's Brief at 9. The use of leading questions on direct examination is generally prohibited except where it is necessary to develop a witness's testimony. *See* Ind. Evidence Rule 611(c). Young, inexperienced, or frightened witnesses may be led in order to develop their testimony. *Riehle*, 823 N.E.2d at 294. "The use of leading questions is limited in order to prevent the substitution of the attorneys [sic] language for the thoughts of the witness as to material facts in dispute." *Id*.

[17] Nieves directs our attention to two examples in the record of the State leading its witnesses. One occurred during the State's examination of Jessie, the other during its questioning of M.S. In both instances, the trial court explicitly or implicitly sustained Nieves's objection to the leading questions. Upon Nieves's second objection, the trial court explained to the jury what a leading question was and why it was important to avoid excessive leading. On appeal, Nieves's claim of prejudice is not specific, and he does not explain why the trial court's explanation to the jury about leading questions was insufficient to cure any prejudice flowing to him. Therefore, Nieves has failed to meet his burden of persuasion on appeal. *See Corbin*, 563 N.E.2d at 93.

---

[3] In his Statement of the Issues and Summary of the Argument, Nieves references a motion to correct error that he contends the trial court erred in denying. A copy of that motion is not part of the record on appeal, and Nieves failed to develop any argument with citations to the record or legal authority in support of his argument. Nieves has, therefore, waived any argument based upon his motion to correct error. Ind. Appellate Rule 46(A)(8)(a); *Dickes v. Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

[18] Our review of the record indicates that the girls, who were eight, seven, and five years old by the time of trial, had difficulty testifying. This was particularly true of M.S. Although the girls had visited the courtroom with the prosecutor and had gone through practice questions, there is no indication in the record that they were experienced witnesses. In any case, defense counsel questioned the girls at length about their trial preparation with the prosecutor, so the jury was aware of it when assessing the girls' credibility. Under these circumstances, the trial court acted within its discretion when it allowed the State to lead its witnesses, and Nieves has failed to persuade us that he suffered substantial injury thereby.

## III. Sentencing

### A. Standard of Review

[19] Except for the power of this court to review and revise sentences pursuant to Indiana Appellate Rule 7(B),[4] "sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion has occurred if a trial court's

---

[4] Nieves argues that the consecutive sentences imposed by the trial court are "excessive in nature." Appellant's Br. at 10. Indiana Appellate Rule 7(B) provides us with authority to review and revise sentences that are inappropriate given the nature of the offense and the character of the offender. The burden to persuade us that a sentence is inappropriate rests with the defendant. *Anglemyer*, 868 N.E.2d at 494. To the extent Nieves requests us to review his sentence pursuant to Rule 7(B), he offers no argument regarding his character. His argument regarding the nature of his offenses, namely that they were a one-time occurrence, is squarely rebutted by his victims' testimony. Nieves has not met his burden of persuasion on appeal. 868 N.E.2d at 494.

sentence is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

## B. Consecutive Sentences

[20] The trial court sentenced Nieves to advisory thirty-year sentences for each of his Class A felony convictions and to an advisory four-year sentence for his Class C felony conviction. *See* Ind. Code §§ 35-50-2-4(a); 35-50-2-6(a). The trial court ordered one Class A felony as to each of the three victims to be served consecutively to each other with the remainder to be concurrent, resulting in an aggregate sentence of ninety years. Nieves maintains that the trial court's sentence is contrary to law because the evidence indicated that his criminal acts all took place during a single occurrence. Without directly stating as much, Nieves seems to base his argument on Indiana Code section 35-50-1-2(c), which limits the total of the consecutive terms a trial court may impose if a defendant's convictions arise out of a single episode of criminal conduct. However, as noted by the State, the statute explicitly excludes "crimes of violence" from its application. *Id.* Child molesting is a "crime of violence" for purposes of the statute. Ind. Code § 35-50-1-2(a)(10). What is more, the factual basis of Nieves's argument is incorrect, as his victims testified that the molesting occurred "a lot," tr. Vol. I at 117, and "more than once," tr. Vol. I at 151.

[21] A trial court may impose consecutive sentences based on one aggravating factor. *See Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*.

Harm to multiple victims is a valid aggravating circumstance supporting consecutive sentences. *French v. State*, 839 N.E.2d 196, 197 (Ind. Ct. App. 2005), *trans. denied*. Here, the trial court explained in its sentencing statement that it was imposing consecutive sentences in recognition of the three separate victims. The trial court did not abuse its discretion when sentencing Nieves.

# Conclusion

[22]   Sufficient evidence supports Nieves's convictions, and the trial court did not abuse its discretion when it allowed the State to pose leading questions or when it imposed consecutive sentences. Nieves's convictions and sentence are affirmed.

[23]   Affirmed.

Vaidik, C.J., and Pyle, J., concur.