Dwayne **CRULL**, Appellant (Defendant Below)

v.

**STATE of Indiana.**

No. 48S00–8802–CR–220.

Supreme Court of Indiana.

July 7, 1989.

Marianne Woolbert, Al S. Woolbert, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Dwayne Crull was convicted following a jury trial in the Madison County Superior Court Division I of two counts of Dealing in a Narcotic Drug, Cocaine, Three Grams or More, for which he received terms of thirty (30) years on each count, with five (5) years suspended (Crull was placed on probation for those five years). He was further sentenced to two (2) years for Maintaining a Common Nuisance. All sentences were ordered to run concurrently.

The only issue presented for review in this direct appeal is whether the trial court erred in denying Crull the right to cross-examine the key witness, a civilian informant, as to his current residence, employment, and other personal matters, that would allow the jury to judge the credibility of his testimony in light of his environment. This informant was the only person to verify that Crull committed the alleged crime, and his testimony would determine Crull's fate.

The facts tend to show that this cause of action originated on June 26, 1986, after an investigation was conducted by the Madison and Grant County Sheriff's Departments of alleged drug trafficking in these counties. This investigation began in late 1985 and continued until a drug raid was conducted on the night of June 26, 1986.

During the course of the investigation, both Sheriff's Departments worked together and, through civilian informers, made controlled buys from individuals suspected of drug trafficking. The two informants used in the case at bar were drug abusers who had turned State's evidence in the past to work off charges pending against them for illegal drug activity. According to the two informants, each had made a controlled buy of three grams or more of cocaine from Crull on four separate occasions. Witness Edward Dale Moore, one of the civilian informers, testified about the two purchases of cocaine he made from Crull in January, 1986. Crull was acquitted of these two charges. The question here involves the second civilian informer, Marc Forman. His testimony was that he had purchased three grams or more of cocaine from Crull on June 4 and 5, 1986. Forman testified he went to Crull's apartment on each of those days and made a controlled buy of three grams or more of cocaine from Crull. The evidence showed the police furnished him with marked money and he was searched to determine that he had no cocaine in his possession when he went into the apartment. The Sheriff's Departments did not use any form of electronic surveillance to verify Crull's presence inside the apartment where the alleged drug transaction took place. Neither did they send an undercover agent in with Forman to verify Crull's participation in the alleged transaction. No video was made of the alleged "buy." The testimony was that Crull was not seen at the alleged transaction site by any police officer. The only person testifying to Crull's presence at the site and the two sales of cocaine was witness Forman.

At the probable cause hearing, investigative officers of both counties presented evidence that Crull lived in the small town of Summitville, Indiana, and worked at various jobs around the State as a laborer with Laborers International Union of North America, Local 112, out of Muncie, Indiana. The investigative officers also presented evidence that Crull was the largest cocaine dealer in the two county area, selling approximately sixty thousand dollars ($60,000) to one-hundred thousand dollars ($100,000) worth of cocaine a week. The officers further alleged Crull, who had family in Georgia which he visited from time to time, had quick access to large sums of money and was transient, disappearing from the Summitville area for days at a time.

An arrest warrant was issued for Crull and on the night of June 26, 1986, the

Madison and Grant County Sheriff's Departments conducted a drug raid in both counties, arresting several individuals, including Crull. The officers arrested Crull, impounded two cars owned by him, and a safe. The safe was believed to be where the money from the lucrative cocaine sales were kept, as well as large amounts of cocaine Crull was purported to have. Upon opening the safe the officers found personal papers, scales, seeds, and less than twenty dollars ($20) in loose change. No cocaine was found in the safe, in the cars, in Crull's home or on his person. The marked money sent in with Forman was not found in any of those places.

Witness Forman testified he became an informant for the police prior to this incident as the result of his arrest for a drug violation. He agreed to act as an informant for the police in exchange for the dismissal of his criminal charge. He claimed he did undercover work for the police that paid his debt to them and was no longer obliged to do undercover work but continued to do so as he felt it was his patriotic duty. That was the nature of his involvement in the instant case.

During cross-examination, defense counsel asked Forman where he lived and where he was employed. Apparently the witness had been living out of the State of Indiana for a period of about a year and was working for a company in another state for approximately three months. He refused to give any testimony about his place of residence other than to state it was not in Indiana, and limited his testimony about employment to the fact that he sold gold products. He would not identify his employer because that would reveal the state of his residence. He stated this information would allow him to be located and that such information was "not anybody's business here." The State objected to defense counsel's questioning the informant as to his exact address or location, claiming the informant was frightened and that was why he did not wish to disclose an exact address. The court excused the jury for recess and heard counsel's arguments regarding questions of this witness of a personal nature, such as address, place of employment, family, and other background information.

With the court's permission, the State examined Forman at which time he stated he was not living in Indiana and requested he not be required to answer questions about his whereabouts because threats had been communicated to him by "some fellow in Summitville" that Crull's father and friends would do him harm. He claimed he could not even answer general questions on cross-examination about what type of work he did without jeopardizing his safety. The only information he gave was that the company was not located in Indiana, had been in business for approximately one year, and that he had not known about the company prior to leaving Indiana.

Defense counsel questioned the witness about his prior deposition testimony in which he gave his place of residence and employment at that time and stated he was not afraid of Crull. He stated at this hearing that he was not afraid of Crull directly but was afraid of possible connections that Crull and his family might have. The court sustained the State's objection based on relevancy. The court stated it was difficult to imagine that this information would have any possible relevance to either credibility or substantive charges and went on to state that this type of information was so tangential and attenuated there was no reason to permit defense counsel to ask these questions.

The court further noted it did not have the slightest idea whether the key witness informant was in any danger but was relying solely on the informant's testimony that he was frightened. The court then instructed defense counsel to refrain from asking any questions of this witness about his present employment, current location, family situation, or any matters along those lines. Defense counsel offered to conduct a hearing to determine if there was an actual threat made to the key witness informant or if he was relying on mere conjecture in stating he was afraid. The court denied defense counsel's offer, stating there would be no purpose served by such inquiry and reiterating it was not

concerned where the informant currently lived and worked since it was of no relevance to the alleged crime that occurred a year before. Defense counsel was allowed to cross-examine the witness in these areas only within the time frame of these charges, June 4 and 5, 1986.

The United States Supreme Court decided this issue nearly sixty years ago in the case of *Alford v. United States* (1931), 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. Alford was charged with using the mails with intent to defraud. A witness for the government was a former employee of Alford. On direct examination he gave damaging testimony with respect to various transactions of the accused, including conversations with the witness when others were not present and statements of the accused to salesmen under his direction whom the witness did not identify. Upon cross-examination, questions seeking to elicit the witness' place of residence were excluded on the Government's objection that they were immaterial and not proper cross-examination. Alford's conviction was reversed by the Court. The *Alford* Court found it a permissible purpose of cross-examination that the witness be identified with his community in an effort to elicit independent testimony of his reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought out tending to discredit the witness by showing his testimony in chief was untrue or biased. *Alford*, 282 U.S. at 691–92, 51 S.Ct. at 219, 75 L.Ed. at 627. Counsel need not show that his cross-examination, if pursued, necessarily will bring out facts tending to discredit the testimony in chief. A cross-examiner is entitled to reasonable latitude even though he is unable to state to the court what facts a reasonable cross-examination may develop.

In 1968, the United States Supreme Court again faced the issue in *Smith v. Illinois* (1968), 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956. Smith was charged with the unlawful sale of narcotics. The principle prosecution witness was an informer who had been given marked money to take into a restaurant and make a drug deal with Smith. There were other people in the restaurant at the time. No police officer went with Smith into the restaurant and his was the only testimony about the drug transaction. When the police went into the restaurant and arrested Smith, he had some of the marked money on him but stated he had bought coffee and could have gotten that money in change. The informer admitted on cross-examination the name he had first given was false. The witness refused to give his correct name and current address. The record showed that, in fact, the defendant and his lawyers knew the informer but there was no evidence that either of them knew the informer's correct name or where he was living at the time of trial. Citing *Pointer v. Texas* (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, and *Alford, supra,* the Supreme Court reversed Smith's conviction, finding that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. The Court further found that in the absence of waiver on the part of the accused, the denial of his right to cross-examine the witnesses against him is a constitutional error which no amount of showing of want of prejudice can cure. This right of cross-examination of the principal prosecution witness in a criminal trial includes the right to ask him questions as to his name and the place where he lives. The *Smith* Court stated it as follows:

> Yet when the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Smith*, 390 U.S. at 131, 88 S.Ct. at 750, 19 L.Ed.2d at 959 (footnote omitted). The Court noted that a trial court is permitted to limit cross-examination which tends to

harass, annoy, or humiliate a witness or go beyond the bounds of proper cross-examination. In a separate concurring opinion, Justice White agreed with the majority and found that a proper area of limitation in the trial court might be to inquire into the personal safety of the witness. He stated that if such a question arises, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question.

The trial judge can then ascertain the interest of the defendant in the answer and exercise an informal discretion in making his ruling. Here the State gave no reasons justifying the refusal to answer a quite usual and proper question.

*Smith,* 390 U.S. at 134, 88 S.Ct. at 751, 19 L.Ed.2d at 960 (White, J., concurring).

The United States District Court for the Seventh Circuit, in *United States v. Palermo,* (7th Cir.1969), 410 F.2d 468, observed the holdings in *Alford, supra,* and *Smith, supra,* as well as those in other jurisdictions and outlined a procedure the trial court must follow in facing this issue. The court agreed with the observations of Justice White in his concurring opinion in *Smith* that the right of the defendant to have the witness's true name, address, and place of employment is not absolute where there is a threat to the life of the witness. The court further observed, however, the threat to the witness must be actual and not a result of conjecture, and that the government bears the burden of proving to the district court the existence of such a threat.

An actual threat being shown, the government must also disclose to the district judge *in camera* the relevant information. *United States v. Varelli,* 407 F.2d 735 (7th Cir.1969). Knowing of the existence of an actual threat and the witness' location, the district judge must determine whether the information must be disclosed in order not to deny effective cross-examination. "The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling." (White, J. concurring) *Smith v. Illinois,* 390 U.S. 129, 134, 88 S.Ct. [748], 751 [19 L.Ed.2d 956] (1968). Such decision is reviewable on appeal. Under almost all circumstances, the true name of the witness must be disclosed. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748 [19 L.Ed. 2d 956] (1968). If the witness is located in a penal institution, this, too, must be disclosed. *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218 [75 L.Ed. 624] (1931). A witness' prior address must also be disclosed if the witness does not intend to return to this location. *United States v. Varelli,* 407 F.2d 735 (7th Cir. 1969). If the trial judge concludes that the defendant does not have a right to the exact address of the witness and his place of employment, the defendant is entitled to ask any other relevant questions which may aid the jury in weighing the witness' credibility.

Here, the trial judge, having been requested to order Seidler and Riley to disclose their addresses and present employment, refused to order them to answer. While there was an adequate showing of a threat to the life of Riley, there was no showing as to Seidler. In neither case was the relevant information disclosed to the trial judge in order that he could make an informed decision. On remand the government must comply with the standards set out above.

*Palermo,* 410 F.2d at 472–73. *See also United States v. Caldarazzo* (7th Cir.1971), 444 F.2d 1046; *United States v. Varelli* (7th Cir.1969), 407 F.2d 735.

In the instant case, Forman's credibility was much in issue since his uncorroborated testimony provided the evidence upon which Crull's conviction was based. There was no finding by the trial court that Forman had any reason, other than speculation, for fear due to threats. The trial court did not inquire into this, stating he did not know whether there was any danger but thought it was irrelevant. The requested personal information about the witness was not furnished to the judge *in camera;* accordingly, he was not in a position to know all of the facts and circum-

stances in order to make an informed judgment.

This is consistent with our holding in *Johnson v. State* (1988), Ind., 518 N.E.2d 1073, where this Court found no abuse of discretion by the trial court in restricting cross-examination. In *Johnson*, the defendant admitted to an acquaintance, Bradley, that he murdered the victim approximately one year before. Thereafter, Bradley went to the police. At trial, Bradley testified that Johnson informed him of his involvement in the murder. During cross-examination, the State objected to defense counsel's asking where Bradley lived. At that point, the trial court properly held an *in camera* hearing during which Bradley revealed he had received anonymous threats and was under police protection. This Court found no abuse of discretion where the trial court held an *in camera* hearing and found a reasonable fear existed that disclosure of Bradley's home address would endanger his safety. *Johnson*, 518 N.E.2d at 1076.

This was not done in the instant case. We must conclude the trial court erred in restricting the cross-examination of witness Forman and accordingly reverse the trial court and order a new trial.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.