Robert JACKSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–8610–CR–864.

Supreme Court of Indiana.

Oct. 11, 1989.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the St. Joseph Superior Court, Defendant–Appellant Robert Jackson was found guilty of· the crime of Attempted Murder, a Class A felony. The trial court sentenced him to the presumptive term of thirty (30) years which was enhanced by thirty (30) years pursuant to an habitual offender finding, for a total term of sixty (60) years.

Several issues are presented for our review but since we find the first issue presented by Jackson requires reversal and the order of a new trial, we decline to consider the remaining issues.

▮ Jackson claims the trial court failed to adequately instruct the jury on the element of specific intent for the crime of attempted murder. He cites this Court's holding in *Smith v. State* (1984), Ind., 459 N.E.2d 355. In *Smith*, the trial court instructed the jury that the essential elements of the crime of attempted murder which the State of Indiana was required to prove beyond a reasonable doubt were 1) that the defendant knowingly, 2) engaged in conduct that constituted a substantial step toward the commission of murder. *Id.* at 357. It was noted that the attempt statute, Ind.Code § 35–41–5–1 provides in pertinent part:

(a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engaged in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a class A felony.

*Id.*

*Smith* held that elements of attempted murder are that the defendant was acting with the specific intent to commit the crime of murder and that he engaged in an overt act which constituted a substantial step toward the commission of that crime. *Id.*

(citing *Zickefoose v. State* (1979), 270 Ind. 618, 622, 388 N.E.2d 507, 510). The shortcoming this Court found in the instruction given in *Smith* was that the court was instructing the jury they need find only that the defendant knowingly took a substantial step toward the commission of murder. The court failed to instruct the jury that the defendant must take the substantial step with intent to kill the victim. *Smith*, 459 N.E.2d at 358. In *Smith*, as in the case at bar, no objection was made by the defendant at the time the instruction was given. This Court noted, however, that when an instruction purports to set forth all of the elements of the crime necessary in a conviction, the instruction is fatally defective if a necessary element is omitted. This is considered fundamental error. *See Duling v. State* (1976), 170 Ind.App. 607, 613, 354 N.E.2d 286, 292.

In *Santana v. State* (1986), Ind., 486 N.E.2d 1010, this Court held it is entirely correct to use the word knowingly as well as intentionally, to describe the *mens rea* element of the crime of attempted murder. *Santana* acknowledged that the error in *Smith* was that the second portion of the instruction focused on the proscribed conduct and not on the proscribed result. The instruction given in *Santana* for attempted murder was approved in the following form: "(1) the defendant knowingly or intentionally (2) took a substantial step to accomplish (3) a knowing or intentional killing of another human being." This instruction advised the jury the defendant had the intention to kill another human being and took a substantial step to accomplish that result.

The instruction given in the case at bar was: "A person who knowingly or intentionally kills another human being commits a murder, a felony. To convict the defendant of attempt, the state must have proved each of the following elements: 1. The defendant, Robert Jackson; 2. knowingly; 3. attempted to kill; 4. Allen Smet." This instruction fails to meet the requirements of *Smith* or *Santana*. The instruction uses the language "attempted to kill" rather than defining the elements of an attempt to kill. Although it does use the

language "knowingly attempted to kill" it does not inform the jury of the elements of attempted murder, namely that defendant with intent to kill Allen Smet, took a substantial step to accomplish that end. Since this was fundamental error, Jackson's conviction is reversed and a new trial is ordered.

We do note two problems that may reappear on retrial and find it advisable to resolve them here.

Throughout the entire record of this case, the charge and conviction of Jackson is referred to as the crime of Attempt, a Class A felony, rather than Attempted Murder, a Class A felony. The charging information was captioned "Information For Attempt, Class A Felony," although the body of the charging instrument did contain allegations of all of the elements of attempted murder. However, the jury verdict was "We, the jury, find the defendant, Robert Jackson, guilty of Attempt, a Class A felony" and the judgment of conviction entered by the trial court adjudged Robert Jackson to be guilty of Attempt, a Class A felony. Jackson was sentenced to a term of thirty (30) years for a conviction of Attempt, a Class A felony, to which was added thirty (30) years for the habitual criminal finding.

There is no crime of attempt. The crime being charged is the one Jackson allegedly attempted to commit. The suspect charged must have had the intention to commit the crime charged and must have taken a substantial step toward commission of that crime. An attempt to commit that crime is of the same class as the crime attempted. The charge here was attempted murder and was a Class A felony by the terms of the attempt statute. IC 35-41-5-1.

■ The second problem concerns the prior criminal history of witness Sean Hughes. Hughes was an accomplice in the shooting of Allen Smet. Hughes accompanied Jackson to Smet's home but fired no shots at Smet. Hughes entered into a plea bargain with the State and testified as a State's witness. Hughes testified he entered a plea of guilty to a charge of assist-

ing a criminal as a Class C felony which had been reduced from a Class A felony. He denied he made any agreements to testify which resulted in a reduced term for him but did admit he assumed it was understood he would testify in favor of the State. During cross-examination Hughes admitted he had asked the police what it would take for him to walk completely away from this case and have the charges dropped. He further stated he offered to act as a functionary for the police in order to get the charges reduced.

The problem with Hughes arose when, on cross-examination, the defense asked Hughes about his prior criminal convictions:

Q. And do you recall being asked the question whether or not you had any prior felony or any misdemeanor convictions against you?

A. I hadn't.

Q. Pardon?

A. Sean Hughes hadn't.

Q. Sean Hughes hadn't? Who had? Is Sean Hughes not your real name?

*Record* at 658. The fact is Sean Hughes is not the witness' real name as he has a different identity pursuant to the federal witness protection program. Hughes has no prior criminal convictions under the name of Sean Hughes but apparently was convicted of at least five (5) burglaries prior to entering the witness protection program in another jurisdiction. The trial court and the attorneys engaged in lengthy side bar conferences in court and conferences outside the presence of the jury. We are not furnished with all of the areas covered by those conferences but can gather that the witness was unwilling to testify about his past identification. The court indicated it would not require the witness to answer questions about his past that might reveal his true identity, and at one time stated he would permit Hughes to be asked and required to answer any *Ashton*-type questions that were directly put to him naming the specific offense. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Finally, however, the trial court held that Hughes would not be required to an-

swer any questions, including those about prior felony convictions. The court ruled:

.I said my ruling is that I'm not going to order Mr. Hughes to answer questions about prior felony convictions. He's taken the position that it will incriminate him in some matters that I have no knowledge of. I don't understand his background, but he feels it will incriminate him in some other way with some other authority, and I don't see under those circumstances how I can order him to answer and find him in contempt if he refuses to answer as to his prior record. And that's my ruling, so we'll bring the jury back. My ruling is that I do not expect him to be asked questions about his prior record.

*Record* at 668.

It is well settled that the defendant had the right to require this witness to answer questions put to him concerning his prior felony convictions. *Ashton, supra;* IC 34–1–14–14. Burglary is one of the crimes which may be presented for this purpose. *Ashton,* 258 Ind. at 57, 279 N.E.2d at 213. While a trial judge has discretion to determine the scope of cross-examination and only clear abuse of that discretion is reversible, it is well established that a Sixth Amendment issue is raised when the trial court prohibits defense counsel from cross-examining altogether a crucial witness for the State on an area concerning his credibility. *Crull v. State* (1989), Ind., 540 N.E.2d 1195. *See also Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674; *Davis· v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. It is particularly important here that Hughes stated before the jury that he had not been convicted of any felonies. Moreover, Jackson was in no position to bring rebuttal witnesses because Hughes' past identity was unknown. There were some inferences in the briefs that Jackson may have had some knowledge of the witness' past but we cannot say this was clearly shown. Hughes' testimony was crucial. Significantly, Hughes testified as an accessory to the acts which put him at the scene when Jackson's al-

leged acts were committed. *See Smith v. Illinois* (1968), 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956. It appears the trial court was correct in refusing to order Hughes to testify as to his past identity and activities protected by the federal program. However, it would not have been necessary to reveal these facts in order to inform the jury that Hughes had, in fact, been convicted of five prior felonies in another jurisdiction. The State does not deny it was aware of these felonies and the dates of their commission. Further, it does not appear Jackson demanded any more than this. On retrial, Jackson should be permitted to cross-examine Hughes consistent with this holding.

The trial court is reversed and a new trial is ordered.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without opinion.