Leonard **PIGG, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 34A02–9107–CR–302.

Court of Appeals of Indiana,
First District.

May 11, 1992.

**4.** *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Mark A. Ryan, Williams & Ryan, Kokomo, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Leonard Pigg appeals his convictions and sentences for two counts of dealing in cocaine, Class A felonies (dealing cocaine within 1,000 feet of school property).[1]

Pigg raises several issues for our review, but because we reverse, we need address only two:

I. Whether the trial judge erred in denying Pigg's motion for change of judge.

II. Whether the trial court erred in refusing to allow Pigg to ascertain the informant's then current residence address through cross-examination.

1. IND. CODE 35–48–4–1(b)(3)(A).

## FACTS

On December 12, 1988, James Darden, a Kokomo police confidential informant, met with Kokomo police officers to prepare for a controlled buy of cocaine. Police searched Darden, made sure he had no drugs, wired him, gave him marked money, and followed him to the tavern appellant Pigg owned. Darden went inside alone and returned with a white powder he said was cocaine he purchased from Pigg. Four months later, on April 13, 1989, police and Darden repeated the security procedure and Darden went alone into Pigg's home and again returned with a white powder he said was cocaine he purchased from Pigg. Subsequent chemical tests by the Indiana State Police Laboratory revealed the powder Darden purchased in both transactions was in fact cocaine.

Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I

Pigg first argues Judge Brubaker should have granted Pigg's motion for change of judge because the judge was biased against him. Although this question is not dispositive of the appeal, we address it because it is likely to arise on retrial.

Prior to the events of December 1988 and April 1989, one Diane Cook was tried and convicted on confinement charges before Judge Brubaker, who sentenced Cook to eight years' imprisonment. Additionally, Judge Brubaker presided over a juvenile proceeding involving Cook's son. During Cook's incarceration, she sent several unsolicited letters to Judge Brubaker requesting his assistance in various personal matters: Judge Brubaker did not respond.

The record does not reveal the specific chronology, but Judge Brubaker suspended a portion of Cook's sentence and put her on probation. One of the terms of her probation was to have no contact with Pigg. Cook failed to abide by this condition, however, and Darden testified Cook provided

Pigg with the cocaine Darden purchased in the December 1988 transaction. In August 1990, a jury convicted Cook on five of seven pending charges, including charges stemming from the December 1988 transaction, and Judge Brubaker sentenced her to an aggregate term of 30 years' imprisonment. While in prison on these convictions, Cook continued to send unsolicited letters to Judge Brubaker. In one of these letters, Cook offered to testify against Pigg. The letter was eventually reviewed by the Prosecutor's office, but in the end, Cook, who had previously been listed as a defense witness, did not testify for either the State or Pigg. Pigg argues this history, coupled with the fact Judge Brubaker rejected two plea agreements between Pigg and the State, leads to the conclusion Judge Brubaker was biased against him. He is mistaken.

■ At the outset, we note it is a matter of utterly mundane routine for trial judges to receive letters from parties, including criminal defendants. If we were to adhere to Pigg's view that receipt of letters is tantamount to bias, very few cases, criminal or civil, would be resolved. Moreover, the law presumes a judge is unbiased and unprejudiced. *Lasley v. State* (1987), Ind., 510 N.E.2d 1340. A motion for change of judge is committed to the judge's discretion and we will reverse a decision on a change of judge motion for an abuse of that discretion only when the record discloses actual prejudice and bias against the appellant. *Smith v. State* (1985), Ind., 477 N.E.2d 857. Pigg has wholly failed in his burden as appellant to show any type of bias or prejudice here.

■ First, Pigg's reliance on the content of Cook's letters is immaterial. The effect of a communication, not its content, is the issue, and it is an issue committed to the trial judge's discretion. *Austin v. State* (1988), Ind.App., 528 N.E.2d 792, 794. "[I]n the absence of circumstances supporting a contrary conclusion, we assume the judge would have complied with the obligation to disqualify [him]self had there been any reasonable question concerning" his ability to be impartial. *Id.* Second, the

fact Judge Brubaker had knowledge of Pigg as a result of the proceedings against Cook does not show bias. *Reynolds v. State* (1991), Ind.App., 575 N.E.2d 28, 30, *trans. denied.* Conduct alone can show bias. *Id.* Third, trial judges are free to reject tendered plea agreements, *Reffett v. State* (1991), Ind., 571 N.E.2d 1227, and a rejection does not establish prejudice. *Clemons v. State* (1981), Ind., 424 N.E.2d 113.

Pigg has pointed to no facts which would establish that Judge Brubaker was biased against him and Judge Brubaker therefore did not err in denying Pigg's motion for change of judge.

## II

■ At trial, Pigg's counsel cross-examined Darden, the confidential informant. When counsel asked Darden for his then current residence address, the State objected on relevancy grounds, and the trial court sustained the objection. This was error.

Darden was the only witness to the controlled buys; attacks on his credibility were the keystone of Pigg's defense, and "the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives." *Crull v. State* (1989), Ind., 540 N.E.2d 1195, 1198 (quoting *Smith v. Illinois* (1968), 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956, 959). By establishing the government witness's residence, as well as his true name, place of employment, and other personal data, the foundation is laid for determining the witness's reputation for veracity within his community. *Id.* Darden's address was relevant.

*Smith* and its progeny make clear that reversible error flows directly from the refusal to allow the inquiry into the government witness's personal data. The defendant need not establish additional prejudice. *Crull,* 540 N.E.2d at 1198. The trial court, however, is not absolutely required to allow the inquiry. If the State can show, through an *in camera* proceeding, that the witness will be endangered by

disclosing his address or other personal information, then the judge has the discretion to refuse to allow the inquiry. "If the trial judge concludes that the defendant does not have a right to the exact address of the witness and his employment, the defendant is entitled to ask any other relevant questions which may aid the jury in weighing the witness' credibility." *Id.* at 1199.

As in *Crull*, the State here made no attempt to show the witness was in danger, and thereby denied the trial judge an opportunity to make an informed decision on the admission of Darden's address into evidence.

## CONCLUSION

Under the mandate of the United States Supreme Court in *Smith*, as followed by our supreme court in *Crull*, the judgment of the trial court is reversed and the cause is remanded for a new trial.

BARTEAU, J., concurs with separate opinion.

SULLIVAN, J., concurs with separate opinion and joins BARTEAU, J., in her concurring opinion.

BARTEAU, Judge, concurring.

I concur, writing separately to express my concern about seemingly contradictory Indiana precedents regarding cross-examination of a State's witness as to the witness's address. In particular, I perceive divergent caselaw on a burden-of-proof question: must the State demonstrate why its objection to the "witness's address" question should be sustained, or must the accused show why the witness's address should be disclosed.

It is axiomatic that the scope of cross-examination is a matter committed to trial court discretion, and that such issues are reviewed for abuse of discretion only. However, discretion to limit cross-examination of government witnesses by an accused must be measured against the sixth amendment right to confront such witnesses. In my view, the majority opinion in *Smith v. Illinois* (1968), 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 holds that a *per se* abuse of discretion occurs if a trial judge sustains a prosecutor's objection to the witness's address question.[1] That holding is binding on state courts. 390 U.S. at 133, 88 S.Ct. at 750. Two Justices concurred, but wrote separately to state their opinion that it would be proper to sustain the objection if the prosecution could show legitimate concerns for the witness's safety. With the passage of time, the concurring opinion in *Smith v. Illinois* has come to the fore. *See, e.g., United States v. Navarro* (1984), 7th Cir., 737 F.2d 625, 632–34, *cert. denied sub nom. Mugercia v. United States*, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364.

Turning to Indiana cases, in *Crull v. State* (1989), Ind., 540 N.E.2d 1195, our supreme court reversed a narcotics conviction because the trial court sustained an objection to the witness's address question. *Crull* discussed *Smith v. Illinois* at length, then cited *United States v. Palermo* (1969), 7th Cir., 410 F.2d 468, which had agreed with the concurring opinion in *Smith v. Illinois*, for the idea that "the threat to the witness must be actual and not a result of conjecture, and that the government bears the burden of proving to the [trial] court the existence of such a threat." 540 N.E.2d at 1199. *See also Jackson v. State* (1989), Ind., 544 N.E.2d 853, 854–56 (where witness was in federal witness protection program, supreme court required disclosure of witness's prior felonies but not prior identity or address).

*Crull* stated that it was consistent with *Johnson v. State* (1988), Ind., 518 N.E.2d 1073. In *Johnson*, the supreme court held no error occurred in prohibiting the witness's address question where the witness testified during a hearing *in camera* that he had received anonymous threats and was under police protection. The cases seem inconsistent, however, because *John-*

---

1. *Smith v. Illinois* acknowledged that it would be no abuse of discretion to limit cross-examination to protect a witness who has invoked the privilege against self-incrimination, or to prohibit cross-examination designed "merely to harass, annoy or humiliate [the witness]." 390 U.S. 129, 133, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (*quoting Alford v. United States* (1931), 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624.

*son* stated that "[t]o show an abuse of discretion, a defendant must demonstrate how he was prejudiced by the court's actions." 518 N.E.2d at 1075. I cannot reconcile that with either the majority or concurring opinion in *Smith v. Illinois*.[2]

When this issue was raised in *Corbin v. State* (1990), Ind., 563 N.E.2d 86, the supreme court held no error occurred, finding *Johnson* dispositive, and quoting the portion of *Johnson* stating that the defendant must demonstrate how he was prejudiced. As to *Crull, Corbin* distinguished itself in this way: "[i]n the instant case, unlike *Crull*, appellant made no request for an *in camera* hearing to determine reasonableness of refusal to disclose [the State's witness's address]." 563 N.E.2d at 90.

In this case, there was no *in camera* hearing, nor any request for one. Thus, Pigg was situated similarly to the defendant in *Johnson*, who had "point[ed] to no evidence he was prevented from presenting by failure to be advised of the witness' address." *Johnson*, 518 N.E.2d at 1075. However, the State in Pigg's case did not show an "actual" threat to the witness. *Crull*, 540 N.E.2d at 1199. Indeed, the witness started to give his address before the prosecutor objected. Record at 459.

In my opinion, *Johnson* and *Corbin* are authority to hold that there was no error here. On the other hand, *Crull* and *Smith v. Illinois* teach that it is reversible error to sustain an objection to the address question unless the government shows an actual threat to the witness. Faced with these divergent precedents, I choose to follow the higher authority, *Smith v. Illinois*. Accordingly, I concur.

SULLIVAN, Judge, concurring.

While I agree that Pigg has not demonstrated as a matter of law that Judge Bru-

baker was actually biased and prejudiced against him or his defense, the facts and circumstances lead me to the conclusion that the appearance of justice would have been better served by the granting of Pigg's Motion for Change of Judge. *See Board of Trustees of Public Employees' Retirement Fund v. Hill* (1985) Ind., 472 N.E.2d 204. Nevertheless, cause for reversal has not been shown by the denial of the Motion. Furthermore, it is assumed that the retrial will be conducted before a different judge.

I concur in Judge Baker's opinion which holds that it was reversible error to sustain the State's objection to Pigg's questions concerning the informant's place of residence and employment. I also join Judge Barteau's separate opinion noting an apparent inconsistency in Indiana precedent with respect to the burden of showing an actual threat to the safety of the witness and with respect to prejudice occasioned to a defendant by failure to disclose such identity information.

---

**2.** The majority opinion in *Smith v. Illinois* followed, and quoted extensively, *Alford v. United States* (1931), 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. The quoted portion of *Alford* included the following:

> It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in

his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.... To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Smith v. Illinois*, 390 U.S. at 132, 88 S.Ct. at 750.