**In re The ESTATE OF Alethea WHEAT, Deceased, Appellant–Plaintiff.**

No. 31A01–0601–CV–28.

Court of Appeals of Indiana.

Dec. 11, 2006.

Gordon D. Ingle, Corydon, IN, Attorney for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

Barbara Whitman, personal representative of the Estate of Alethea Wheat ("PR"), appeals the trial court's October 5, 2005, order holding her liable for certain financial miscalculations involving the distribution of Estate assets to beneficiaries of Wheat's will, arguing that the trial court lacked jurisdiction under Indiana Code § 33–23–2–4 to modify the previous order on the issue, issued January 10, 2005, because more than ninety days had passed. She also appeals from the trial court's denial of her motion for change of judge and her motion to correct errors related to the trial court's ruling that she and her husband be required to pay inheritance taxes on certain property they owned jointly with Ms. Wheat. We find that the trial court retained jurisdiction to modify its January 10, 2005, order because the case at all times remained pending before the court and therefore the ninety-day rule upon which Whitman relies, which applies only to final judgments disposing of cases, is inapplicable. However, we find that the trial court erred when it ordered Whitman, instead of the beneficiaries, to reimburse the Estate for the overpayments resulting from her miscalculation. We further find that the trial court acted within its discretion when it denied Whitman's motion for change of judge and motion to correct errors regarding inheritance taxes on the jointly owned property. Accordingly, we affirm in part, reverse in part, and remand to the trial court with instructions.

### Facts and Procedural History

Alethea Wheat died on June 2, 2003, at the age of ninety-seven. Her Estate was opened on June 25, 2003, and her great-niece-in-law, Barbara Whitman, was appointed personal representative of the Estate pursuant to Ms. Wheat's Last Will and Testament. On July 9, 2004, the PR filed a Verified Petition for Final Accounting, which the trial court approved at a hearing on August 13, 2004. The trial court's order did not contain a distribution list, and it was never distributed to the PR or other parties of interest.

Between August 13 and August 31, 2004, the PR distributed each beneficiary's share of the Estate. On August 31, 2004, the PR discovered that she had miscalculated all of the beneficiaries' shares of the Estate when she failed to account for the fact that one of the beneficiaries was entitled to two shares instead of only one. She filed an Amended Verified Petition for Final Accounting and Motion for Emergency Hearing. On September 16, 2004, the trial court conducted a hearing, and the PR requested that the beneficiaries be ordered to repay the Estate in the amount each of them had been overpaid so that she could redistribute that money per the terms of Wheat's will. The trial court withheld its decision and ordered the PR to provide a legal basis for the requested relief, and the PR submitted supplemental information on October 13, 2004.

On November 1, 2004, the trial court issued an order requiring the PR to file an Indiana Inheritance Tax Return and to submit the exact amounts she sought to have each beneficiary return to the Estate. In this order, the trial court found that the distributions made by the PR were partial distributions pursuant to Indiana Code § 29–1–17–1(c), which provides:

> After the expiration of the time limited for the filing of claims and before final settlement of the accounts of the personal representative, a partial distribution may be decreed, with notice to interested persons as the court may direct. Such distribution shall be as conclusive as a decree of final distribution, except

that the court may, as provided in section 2(b) of this chapter, modify such decree of partial distribution to the extent necessary to protect the other distributees and claimants, and assure them that they will receive the amount due them on final distribution. Before a partial distribution is so decreed, the court may require that security be given for the return of the property so distributed to the extent necessary to satisfy any distributees and claimants who may be prejudiced as aforesaid by the partial distribution.

On December 7, 2004, the PR filed an Indiana Inheritance Tax Return and provided the trial court with a listing of the requested amounts to be returned, totaling $24,533.88.

On January 10, 2005, the trial court issued its Final Order on Amended Verified Petition for Final Accounting and Indiana Inheritance Tax Return, wherein the court ordered all of the beneficiaries to return the amounts requested by the PR to the Estate on or before February 15, 2005. The court also ruled that the PR and her husband had to pay inheritance taxes in the amount of $15,134.52 plus penalties and interest on certain accounts they held jointly with Wheat at the time of her death. Following the January 10, 2005, order, seven of the twelve beneficiaries repaid the Estate, but five refused to do so. On February 9, 2005, the PR filed a motion to correct errors exclusively on the issue of the additional inheritance tax she and her husband were ordered to pay. The trial court set a hearing on the motion to correct errors for April 8, 2005.

Also on February 9, 2005, the trial court issued an Amended Indiana Inheritance Tax Return. Contrary to the trial court's

January 10, 2005, order, the amended tax return exempted the jointly held accounts from taxation. The trial court also issued, *sua sponte*, an order scheduling a hearing for February 17, 2005, noting that the January 10, 2005, inheritance tax return may have been inaccurate and should be recalculated.[1]

On March 2, 2005, the trial court received a letter from one of the beneficiaries, Darrell Brown ("the Brown Letter"), copies of which the court ordered the court clerk to distribute to all interested parties. This letter protested the repayment of any amounts by the beneficiaries and stated Brown's position that since the PR miscalculated the distribution amounts, she should be held personally liable. The Brown Letter also voiced Brown's suspicions that the PR had failed to live up to her agreement to care for Wheat before her death, that Wheat wanted to change her will because of this, and that the PR, who worked at a bank that held many of Wheat's assets, manipulated Wheat in order to be named as a joint holder of those assets.

On March 17, 2005, the PR filed a Verified Application for Change of Judge, alleging that the trial court entered its *sua sponte* order scheduling the February 17, 2005, hearing after receiving information outside the record. The PR also alleged that the trial court's distribution of the Brown Letter was improper because the letter contained statements that were *per se* defaming against her and that this resulted in one of the beneficiaries, Mary Alice Hess, stopping payment on the check she had written the Estate as repayment. The PR alleged that all of these considerations, taken together, raised a reasonable

---

**1.** The record does not suggest any explanation for the trial court's decision to issue an amended inheritance tax return on the same day it scheduled a hearing to address its determination that the original inheritance tax return should be recalculated.

doubt as to the judge's impartiality. On March 29, 2005, the trial court summarily denied the application.

On April 8, 2005, the trial court held a hearing on its *sua sponte* order and the PR's motion to correct error. The trial court verified the relationships of each of the beneficiaries to the Deceased and recalculated the inheritance taxes due. Acknowledging that this information could affect the motion to correct error, the PR requested and received a continuance on the motion.

On April 27, 2005, the trial court received a letter from another beneficiary, Marie Florence ("the Florence Letter"), which it promptly circulated to all interested parties. The Florence Letter again questioned the propriety of the court's January 10, 2005, order requiring beneficiaries to return the excess portions of their distributions and the manner in which the distributions were being taxed. Like the Brown Letter, the Florence Letter contained a request that the PR be held financially responsible for any miscalculations. On May 13, 2005, the trial court scheduled a hearing for June 17, 2005,[2] on the Florence Letter, stating in its order that it considered the letter to be "a request for clarification and return of payments." Appellant's App. p. 122. At the hearing, the trial court took all pending matters into consideration, and it permitted the PR to again continue the motion to correct errors pending rulings on those issues.

On October 5, 2005, the trial court issued its Order Entry for June 1[7], 2005.[3] In this Order, the court made the following findings and conclusions:

2. The Personal Representative's Motion To Correct Errors is DENIED;

3. As a matter of equity, it is inequitable for some heirs to return or refund miscalculated excess distributions to the Estate while other heirs do not;

4. The Personal Representative shall return to any heir the amount of partial distributions he or she returned to the Estate pursuant to the order entered January 10, 2005, . . . .

5. The Personal Representative has not complied with that portion of Article I of decedent's Last Will and Testament which directed her to ". . . pay out of my estate, as part of the expenses of administration, all estate and inheritance taxes, if any may be due, including those attributable to all non-probate assets, without charging the specific beneficiaries with their respective share of said taxes;"

6. Since the Personal Representative has transferred essentially all the assets of the estate to beneficiaries by her miscalculation and in contravention of Article I of decedent's Last Will, the Personal Representative is ordered to personally pay the inheritance tax resulting from the survivorship accounts, the five (5%) [sic] reduction in inheritance tax

**2.** The trial court scheduled this hearing on the same date as another hearing in the case stemming from a separate action against the Estate brought by the Indiana Department of Revenue ("IDR") for the determination of certain inheritance tax and penalty issues. Following a motion by the PR, the court consolidated the two hearings. On August 22,

2005, the IDR filed a motion to dismiss, which the trial court granted.

**3.** The Order Entry refers to June 1, 2005; however, recognizing that no hearing was held on that date and that the June 17, 2005, hearing was the last in the case, we presume this to be merely a scrivener's error.

which was forfeited by not timely filing an inheritance tax return,[4] and any and all sums listed in the Order entered January 10, 2005[,] under "Amount To Be Returned To Estate" calculated by the Personal Representative to total $24,533.58.;
. . .

*Id.* at 134–35. On November 2, 2005, the PR filed a Motion to Correct Errors with regard to the October 5, 2005, order. She alleged that the trial court abused its discretion when it modified the January 10, 2005, order and when it denied the PR's first Motion to Correct Errors. The trial court denied this motion on November 30, 2005, stating, "The letter from the pro se heir which the Court considered to be a Motion for Clarification was also considered as a Motion to Reconsider, although not previously designated." *Id.* at 140. The PR filed a Notice of Appeal on December 20, 2005, and this appeal now ensues.

**Discussion and Decision**

On appeal, the PR raises three issues: Whether the trial court erred when it (1) modified its January 10, 2005, order regarding the beneficiaries' obligation to repay money to the Estate; (2) summarily denied the PR's Verified Motion for Change of Judge; and (3) summarily denied the PR's first Motion to Correct Errors. We address each issue in turn.

 We note at the outset that the appellee has failed to file a brief in this appeal. "When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we will reverse the trial court's judgment if

the appellant's brief presents a case of prima facie error." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind.2006). "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (citing *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind.Ct.App. 1999)). "Where an appellant is unable to meet this burden, we will affirm." *Id.*

**I. Modification of Previous Order**

 The PR argues that the trial court lacked the power to modify its January 10, 2005, order wherein it ordered the beneficiaries to repay the Estate the amounts requested by the PR. Indiana courts have long held that "[a] court may, upon motion to reconsider or rehear, upon its own motion or the suggestion of a party, vacate, set aside, amend or modify a ruling entered in the same term of court, since such a matter is *in fieri*." *In re Estate of Hammar*, 847 N.E.2d 960, 962 (Ind.2006) *(citing State ex rel. Rans v. St. Joseph Superior Court*, 246 Ind. 74, 78, 201 N.E.2d 778, 779–80 (1964)); *see also Glessner v. Clark*, 39 N.E. 544, 140 Ind. 427 (1895). "A trial court's control and discretion to change its own rulings is firmly established in common law, and we will review a trial court's reconsideration of its prior rulings for abuse of discretion." *In re Hammar*, 847 N.E.2d at 962.

 In support of her position, the PR cites Indiana Code § 33–23–2–4, which states, "All courts retain power and control over their judgments for ninety (90) days after rendering the judgments in the same manner and under the same conditions as they retained power and control during the term of court in which the judgments were rendered." However, this language is not

4. Though not specifically discussed further in the appellant's brief, we presume that this matter was part of the resolution of the IDR's complaint against the Estate and that the PR challenges—as she does with regard to payment of other amounts—the court's determination that she should be personally liable for payment.

so broad as the PR suggests. We can find no case applying this statute to any trial court ruling other than the final judgment disposing of a case, and nothing in the statute suggests that the rule applies to orders issued while matters are still pending before the trial court. The ninety-day rule set forth in Indiana Code § 33–23–2–4 applies, then, only to the final judgment rendered in a case; in estate cases before a trial court, a final judgment is one that closes the estate. *See* Ind.Code § 29–1–7.5–4.

In the present case, no closing statement has been filed and, by the PR's own admission, various proceedings remained before the trial court between January 10 and October 5, 2005, including her own motion to correct error and, for a period of time, the IDR's action against the Estate. Moreover, the January 10, 2005, order includes instructions from the trial court regarding actions it perceived the PR still needed to take to move toward closing the Estate. It is clear both that the January 10, 2005, "Final Order" did not meet the requirements of Indiana Code § 29–1–7.5–4 for closing the Estate and that the trial court did not consider the order to be final as to the administration of the Estate, which would trigger the ninety-day rule. As such, the Estate was not closed, and the case was still *in fieri*. Therefore, it was procedurally proper for the trial court to reconsider and ultimately modify its previous order.

■ The PR also alludes, however, to a substantive basis for her claim that the trial court abused its discretion. Her brief includes the statement: "The trial court also exceeded its authority and abused its discretion, because there was no evidence in the record that an inequity was going to occur." Appellant's Br. p. 14. We regard this as a challenge to the grounds upon which the trial court chose to modify its

order. Accordingly, we turn to Finding number 6 in the trial court's October 5, 2005, Order, which provides:

> Since the Personal Representative has transferred essentially all the assets of the estate to beneficiaries *by her miscalculation* and in contravention of Article I of decedent's Last Will, the Personal Representative is ordered to personally pay the inheritance tax resulting from the survivorship account, the five (5%) [sic] reduction in inheritance tax which was forfeited by not timely filing an inheritance tax return, and any and all sums listed in the Order entered January 10, 2005[,] under "Amount To Be Returned To Estate" calculated by the Personal Representative to total $24,533.58.

Appellant's App. p. 135 (Order of Oct. 5, 2005) (emphasis supplied). Pursuant to Indiana Code § 29–1–16–1, "Every personal representative shall be liable for any loss to the estate arising from … neglect in paying over money or delivering property of the estate he shall have in his hands … and for any other negligent or willful act or nonfeasance in his administration of the estate by which loss to the estate arises." The trial court's decision appears to have rested on its determination that the Estate suffered a loss as a result of the PR's miscalculations and mistakes in administration of the Estate. To the extent that the PR's negligence caused the Estate to incur penalties, Indiana Code § 29–1–16–1 supports this determination, and we affirm the trial court.

■ However, to the extent that the trial court also ordered the PR to reimburse the Estate for the excessive distribution amounts, we find the court's determination to be erroneous under the statute. We do not find the excessive distributions to necessarily constitute a loss to the Estate. Had the trial court,

kept that portion of its January 10, 2005, order in place requiring the beneficiaries to reimburse the Estate for the amounts they received, the Estate could have been made whole. The record indicates that following the trial court's January 10, 2005, order, seven of the twelve beneficiaries repaid the Estate. Further, other than their personal objections to repayment, nothing in the record suggests that the other five beneficiaries are unable to reimburse the Estate. Permitting the beneficiaries to retain this money to which they are not entitled and holding the PR personally liable for the mistaken distribution causes the beneficiaries to receive a windfall at the PR's expense—a result not sanctioned by statute because the Estate has sustained no loss as a result of the PR's negligence. We therefore remand to the trial court on this portion of its modified order with instructions to order all twelve beneficiaries to return to the Estate any excessive distribution amount not yet returned.[5]

## II. Change of Judge

 The PR next contends that the trial court abused its discretion by denying her motion for change of judge. A ruling upon a motion for a change of judge rests within the sound discretion of the trial judge and will be reversed only upon a showing of abuse of that discretion. *In re Guardianship of Hickman,* 805 N.E.2d 808, 814 (Ind.Ct.App.2004),

*trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* When reviewing a trial judge's decision not to disqualify himself, we presume that the trial judge is unbiased. *Id.* at 815 (citations omitted). "In order to overcome that presumption, the appellant must demonstrate actual personal bias." *Id.* Absent evidence to the contrary, we assume that the trial judge would have complied with the obligation to disqualify himself had there been any reasonable question concerning his impartiality. *Id.* "Merely asserting bias and prejudice does not make it so. The law presumes that a judge is unbiased and unprejudiced." *Smith v. State,* 770 N.E.2d 818, 823 (Ind.2002).

The PR's brief cites two grounds in support of her motion for change of judge. First, she alleges that the trial judge obtained information from outside the record in this case and relied upon that information when, on February 9, 2005, he *sua sponte* ordered a new hearing to redetermine the inheritance taxes regarding the Estate. However, the PR presented no evidence before the trial court[6] to prove this allegation, and we find none in the record before this Court. Indeed, although the PR claims, "It was apparent to the PR that the trial court had obtained information outside the record," Appellant's Br. p. 18, the record before the trial court at that time contained sufficient in-

---

5. We do note that if any of the beneficiaries should refuse to comply with the trial court's order to return their portion of the excessive distribution, the PR will be required to pursue those beneficiaries in order to collect any outstanding amounts. The PR should be held liable for the costs of any collection actions and, if she is unable to successfully collect, she then should be held liable for the outstanding amounts in order to avoid any loss to the Estate. Of course, the PR then would be able to maintain an action personally

against those beneficiaries, in addition to any action the trial court may take against any beneficiary in contempt of its order.

6. For purposes of clarity, we note that the PR's claims regarding any *ex parte* communications do not involve either the Brown Letter or the Florence Letter, both of which were received by the trial court—and promptly distributed to all interested parties—before the February 9, 2005, order.

formation to alert the trial judge to the erroneous calculation of the inheritance taxes. The trial judge had before him a copy of Wheat's Last Will and Testament, which defined her relationship to each of the beneficiaries of her Estate, Appellant's App. p. 5–6, and he had the Indiana Inheritance Tax Return initially filed for the Estate, which listed each beneficiary's class for purposes of tax exemptions. In some cases, the exemption class in which a beneficiary was placed was incorrect based on their relationship to the decedent, and a comparison of the Last Will and Testament and the tax return would have exposed these errors. Absent evidence to the contrary, then, we cannot agree with the PR's allegation that the trial court must have relied upon information he received from outside the record.

The PR also contends that the trial judge "assisted a party in publishing a defamatory statement about her by ordering the Clerk to distribute" the Brown Letter. Appellant's Br. p. 18. The PR contends that the Brown Letter was defamatory because Mr. Brown accused her of theft when he wrote, "I also did not know about the $178,000 that it appeared they [the PR and her husband] removed from the estate." Appellant's App. at 108.

First, although we need not decide definitively whether the statement in the Brown Letter was defamatory *per se,* the PR has utterly failed to present sufficient evidence of any defamatory nature by merely reciting this single sentence from the letter. Read alone, and certainly when read in context, it does not appear that Mr. Brown accused the PR of theft or even, necessarily, any wrongdoing. Furthermore, the PR does not deny that she and her husband "removed" the money from the Estate, and the evidence indicates that this money was, in fact, removed by the PR and her husband because they jointly owned, with the decedent, several certificates of deposit with rights of survivorship in this amount. The Brown Letter can certainly be construed—and we think rightly so—to indicate not that Mr. Brown was accusing the PR of theft, but that he personally believed the PR legally received a disproportionate amount of the Estate.

More to the point, however, the PR altogether fails to convince us that the trial judge acted inappropriately by distributing the Brown Letter to all interested parties. "It is a matter of utterly mundane routine for trial judges to receive letters from parties...." *Pigg v. State,* 591 N.E.2d 582, 584 (Ind.Ct.App.1992), *opinion adopted in relevant part by* 603 N.E.2d 154, 157 (Ind.1992). The Brown Letter, though not a formal filing, requested relief from the trial court, asking that the PR be made to "pay for [her] own mistake" regarding the miscalculated distribution. Appellant's App. p. 108. The trial judge circulated the letter to all interested parties, thereby apprising them of Mr. Brown's concerns and request and providing the opposing party—the PR—with an opportunity to respond to the letter. This is the appropriate action for a court to take upon receiving a letter from an interested party. Accordingly, the trial judge did not abuse his discretion when he summarily denied the PR's motion for change of judge.

### III. Motion to Correct Errors

The PR also alleges that the trial court abused its discretion when it summarily denied her motion to correct errors without notice or hearing. As previously noted, the PR's motion to correct errors pertained exclusively to the trial court's order that the PR and her husband pay inheritance taxes on property they owned jointly with Ms. Wheat.

We review a trial court's decision to deny a motion to correct errors for an

abuse of discretion, and reversal will only occur when the trial court's decision was against the logic and effect of the facts and circumstances before it, together with the inferences that can be drawn therefrom. *Hockema v. J.S.*, 832 N.E.2d 537, 541 (Ind. Ct.App.2005), *reh'g denied, trans. denied.*

The PR contends that because the trial court initially set a hearing on the motion to correct errors, then twice granted the PR's motion to continue the hearing until other relevant matters had been settled, the trial court was required to hold a hearing on the motion. Upon summarily denying the motion without a hearing, the PR asserts that "she lost the opportunity to present evidence that could have reduced her husband's and her tax liability...." Appellant's Br. p. 22. We cannot agree.

■ First, we address the PR's argument that the granting of a continuance somehow obligated the trial court to permit a hearing on the motion to correct errors. "This Court has long and consistently held that a trial court is not required to hold an evidentiary hearing on a motion to correct error." *Ortiz v. State*, 766 N.E.2d 370, 376 (Ind.2002) (citations omitted). Rather, we consider it sufficient for a party to submit affidavits that set forth sufficient grounds in support of a motion to correct error. *Id.* at 376–77. "The trial court may then rule on the merits of the motion without the necessity of an evidentiary hearing." *Id.* at 377.

The cases cited by the PR for the proposition that scheduling a hearing on a motion to correct errors and continuing that hearing somehow precludes a court from ruling on the motion and dismissing the hearing simply do not support her argument. *See Am. States Ins. Co. v. State ex rel. Jennings*, 258 Ind. 637, 283 N.E.2d 529, 530–31 (1972) (ruling not on the effect of a continuance of a motion to correct

error hearing but rather on certain procedural aspects of correcting an erroneous trial record submitted for appeal); *Town of Portage v. Clifford*, 254 Ind. 443, 260 N.E.2d 566, 571–72 (1970) (holding that trial court abused its discretion when it set aside a continuance granted to defendant two days before trial when, on the day before trial, plaintiff petitioned to have continuance set aside and trial court did so without providing notice to defendant and ensuring that decision to set aside continuance would not cause an injustice); *Amory v. Reilly*, 9 Ind. 490 (1857) (finding, in a case where a trial court granted a continuance of trial but later gave notice to the parties that the continuance had been set aside, that "the continuance of a cause may ... be set aside during the same term, and the parties required to go to trial, if the Court is satisfied that no injustice will thereby be done to either of them."). Absent further support from the PR and unable to find any support in our own research, we cannot agree that the trial court—which is not required in the first place to hold a hearing on a motion to correct errors—was required to hold such a hearing simply because it scheduled and continued a hearing earlier in the proceedings. If the evidence before the trial court in the motion to correct errors was sufficient to support its decision, the court could rule on the motion without a hearing.

■ We must determine, then, whether the trial court had sufficient evidence before it, based on the record in its entirety and including the motion to correct errors, to rule on the motion. In this case, the motion to correct errors directed the trial court to statutory authority—Indiana Code § 6–4.1–2–4(c)—indicating that jointly held property is only subject to inheritance tax to the extent its value exceeds the value of consideration received by the transferor decedent/estate. The motion to

correct errors also alleges that the PR and her husband provided services to the decedent "far in excess of the monetary value of the accounts that were jointly held by Aleathea [sic] Wheat and them," and it lists those services. Appellant's App. p. 84–85. Notably, it does not allege that those services were provided under any sort of agreement regarding the transfer of the jointly held certificates of deposit, and the PR does not suggest on appeal that such evidence exists, which might otherwise add support to her claim that she was prejudiced by the trial court's denial. In any event, Indiana Trial Rule 59(H)(1) states that a motion to correct error based upon evidence outside the record "*shall* be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits *shall* be served with the motion." (Emphasis supplied). To the extent that the PR wished the trial court to consider such evidence, she may not now argue that she would have presented it at a hearing where she has failed to present it, as required, along with her motion to correct errors. Given this information, it appears that the trial court had all of the evidence before it necessary for its ruling on the motion to correct errors. The court acted within its discretion, then, when it set aside the continued hearing and ruled on the motion to correct errors based on the filings and record before the court.

In conclusion, then, we find that the trial court acted within its discretion when it denied the PR's motion for change of judge and motion to correct errors and that the court retained the power to modify its January 10, 2005, order, but that the trial court erred when it ordered the PR instead of the beneficiaries to reimburse the Estate for the excess distributions to the beneficiaries. We therefore affirm in part, reverse in part, and remand to the trial court with instructions to order each of the beneficiaries to reimburse the Estate for any amounts they received as excess distributions.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and CRONE, J., concur.